TIMOTHY FORAN V. JOSEPH HEALY.

No. 14,594.      (85 Pac. 751.)

SYLLABUS BY THE COURT.

1. INSANE PERSONS—*Appointment of a Guardian—Jurisdiction.* Jurisdiction to appoint a guardian over the person and estate of a lunatic belongs exclusively to the probate court of the county where such lunatic has a permanent residence.

2. ———. *Inquiry as to Mental Condition—Limitation of Jurisdiction.* The jurisdiction conferred upon other probate courts by section 3941 of the General Statutes of 1901 to inquire into and adjudicate upon the sanity of persons in the county is intended as a police regulation, and jurisdiction ends with the adjudication and commitment or discharge of such person.

3. ——— *Conclusiveness of Adjudication of Mental Incapacity.* An adjudication of lunacy under section 3941 of the General Statutes of 1901, legally had, is conclusive upon the lunatic and all other persons; and the probate court of the county where such lunatic has a permanent residence may accept and act thereon the same as if such adjudication had occurred in that court.

4. ——— *Foreclosure of a Mortgage on Lunatic's Property— Service upon the Guardian.* Where a guardian has been appointed by the probate court of the proper county, as above stated, and a suit to foreclose a mortgage upon the real estate owned by the lunatic for whose estate such guardian was appointed is commenced in the district court of such county, service of summons upon such guardian will confer jurisdiction upon the district court to adjudicate the rights of such lunatic in the real estate.

5. ——— *Redemption of Property after Restoration to Sanity.* A lunatic whose property has been sold under foreclosure proceedings wherein his guardian was served with summons,

as above stated, has no right to redeem the property from such sale after his restoration to sanity merely for the reason that the court did not acquire jurisdiction by service of summons on such guardian.

Error from Lincoln district court; ROLLIN R. REES, judge. Opinion filed May 12, 1906. Reversed. Opinion denying a rehearing filed July 6, 1906.

*Z. C. Millikin,* and *George D. Abel,* for plaintiff in error.

*Garver & Larimer,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: This is a suit to redeem real estate from what is claimed to have been void foreclosure proceedings. The defendant in error owned the real estate, which is located in Lincoln county, Kansas, where he resided with his family. He became insane some time before March 3, 1897, and wandered away from his home. Soon afterward he appeared at the governor's office in Topeka, armed with two revolvers, and demanded of that official the redress of some imaginary wrong. He was arrested and tried for insanity in the probate court of Shawnee county, adjudged a lunatic, and committed to the state asylum for the insane, where he remained continuously until August 18, 1904, when he was discharged as restored to his right mind.

A duly certified copy of the inquisition proceedings whereby he was committed to the asylum was filed in the probate court of Lincoln county, and application was made there for the appointment of a guardian for Healy's person and estate, and the court appointed John F. Linker as such guardian April 19, 1897. Linker took immediate possession of the estate, returned an inventory thereof, sold personal property under orders of the court, paid the debts and generally managed the estate as guardian, and made reports to

Foran v. Healy.

the court. The real estate had been mortgaged by Healy and his wife in 1891—the land mortgaged consisting of 160 acres, the north half of which was owned by the wife. She died leaving five children and her husband as her heirs. Afterward, and on March 13, 1897, one Fitzpatrick, the then owner of the mortgage, began a suit of foreclosure in Lincoln county. Service of summons upon Linker as guardian was the only service or notice given to Healy. All the other interested parties were duly and properly served with summons.

On August 27, 1897, more than four months after the appointment of Linker, the probate court of Shawnee county, Kansas, appointed one Strauss, of that county, guardian of the estate of Healy. Strauss qualified as guardian, but did nothing whatever under his appointment except make a final report when he was discharged after the restoration of Healy to sanity.

In the foreclosure suit the land was duly sold to the plaintiff, Fitzpatrick. The sale was confirmed and a sheriff's deed executed. Fitzpatrick retained possession of the land until January 18, 1900, when he sold it to the plaintiff in error, who bought in good faith and for full value.

Healy claims the right to redeem upon the ground that the probate court of Shawnee county, where he was adjudged to be insane, had the exclusive power under the statute to appoint a guardian, and therefore the appointment of Linker in Lincoln county and the service of summons upon him were void and the court did not acquire jurisdiction of Healy in the foreclosure suit. This presents the principal question in the case, and the only one if the appointment of Linker was valid.

The sections of the statute bearing most directly upon this question are sections 3941 and 3945 of the General Statutes of 1901, which so far as applicable read:

"SEC. 3941. If information in writing is given to the

probate court that any one in its county is an idiot, lunatic, or person of unsound mind, or an habitual drunkard and incapable of managing his affairs, and praying that an inquiry thereinto be had, the court, if satisfied that there is good cause for the exercise of its jurisdiction, shall cause the facts to be inquired into by a jury."

"SEC. 3945. . . . Upon the return of the verdict the same shall be recorded at large by the probate judge, and if it appear that the person is insane, and is a fit person to be sent to the insane asylum, the court shall enter an order that the insane person be committed to the state insane asylum.. . . . And if it be found by the jury that the subject of the inquiry is of unsound mind, or an habitual drunkard and incapable of managing his or her affairs, the court shall appoint a guardian of the person and estate of such person."

It is claimed that the words "the court," used near the close of the section last quoted, refer exclusively to the court in which the inquisition was held, and that this language is clear, specific, and conclusive. In support of this contention sections 3948, 3977 and 3978 of the General Statutes of 1901 are cited, which read:

"SEC. 3948. The court may, if just cause appears at any time during the term at which an inquisition is had, set the same aside and cause a new jury to be impaneled to inquire into the fact."

"SEC. 3977. If any person shall allege, in writing, verified by oath or affirmation, that any person declared to be of unsound mind . . . has been restored to his right mind, . . . the court by which the proceedings were had shall cause the facts to be inquired into, either by a jury or without a jury, as may seem proper to the court.

"SEC. 3978. If it shall be found that such person has been restored to his right mind . . . he shall be discharged from care and custody, and the guardian shall immediately settle his accounts, and restore to such person all things remaining in his hands belonging or appertaining to him."

It is urged that the probate court of Lincoln county

could not appoint a guardian for the person of Healy
without having personal jurisdiction of him, which it
did not have, as he was then in an asylum outside of
that county and received no notice of the application
for the appointment. On the other hand, it is insisted
by the plaintiff in error that section 3941 of the stat-
utes was enacted to provide for a special purpose, and
should not be permitted to interfere with the operation
of other sections of that chapter according to their ap-
parent design; and that this section was intended to
give jurisdiction over insane persons in counties where
they do not reside, but are merely found, so that the
public might thereby be protected from the danger
and annoyance of such persons. In other words, it
was intended to meet the very contingency shown by
the facts of this case.

In the organization of our courts it seems to have
been intended that all proceedings relating to real
estate and the settlement of estates should take place
where the subject-matter of such proceedings are lo-
cated. This purpose is indicated by the various stat-
utes to such an extent that it may be regarded as the
settled policy of the state. Statutes relating to these
subjects should therefore be construed so as to har-
monize with this policy, where a contrary purpose is
not clearly expressed. In discussing the question
whether or not a guardian for minor children should
be appointed where the minors reside, Mr. Justice
Atkinson, in the case of *Connell v. Moore*, 70 Kan. 88,
78 Pac. 164, said:

"It is the policy of the law to give to the individual
a near-by and convenient court. Save in exceptional
cases, hardships have not been visited upon the citizen
by requiring him, at the expense of time and means,
to respond over long distances to the process of the
courts. The jurisdiction of tribunals having judicial
powers has wisely been limited in that particular. In
pursuance of this policy of the law there has been es-
tablished by the legislature a probate court in each
county of the state. The undoubted purpose of the

legislature in so doing was to give the inhabitants of each county a near-by and convenient tribunal having jurisdiction of probate matters. It will hardly be urged that an exception to these favors in the law was intended by the legislature to be made against the resident minors. . . .

"The mere fact that the legislature failed to designate specifically, in the act relating to guardians and wards, what probate court should acquire jurisdiction of the persons and estates of minors will not be presumed to have been intended to operate against the minor; nor should it be construed to his disadvantage, if equally susceptible of two constructions. If, as in the case at bar, the county adjoining that of the minor's domicile had jurisdiction of the person and estate of the minor, as was sought to be exercised by the probate court of Elk county, then any county in the state, no matter how remote, especially where there chanced to be property belonging to his estate, would have, or could acquire, jurisdiction. This might not only result in much inconvenience, and be also used to the minor's disadvantage in administering the affairs of the estate, but the distance would necessitate added and unnecessary expense." (Pages 94, 95.)

In that case, there being no place designated by statute, the court, in harmony with this general policy of the law, held that jurisdiction belonged to the county where the minors resided.

In this case, however, there is more difficulty, as the language of sections 3941 and 3945, when construed together, furnish some reason for the contention of the defendant in error that the words "the court," as used in the last clause of section 3945, refer to the court holding the inquisition. We appreciate this difficulty, but think it more apparent than real. We feel satisfied in holding that section 3941 is in the nature of a police regulation, intended to protect the people of every county from the annoyance and danger incident to the presence of strange, homeless lunatics wandering about without restraint. With this disposition of that section, the whole act is in harmony with the general policy of the state, and the rule announced

in the case of *Connell v. Moore,* 70 Kan. 88, 78 Pac. 164, applies to its provisions and fixes the jurisdiction of the person and estate of Healy in the probate court of Lincoln county. This preserves the general symmetry of the statutes as a whole, and eliminates many difficulties and incongruities which would otherwise result.

This very case illustrates some of the mischievous consequences which might result under a different rule. Healy was found to be insane, a resident of Lincoln county, and without an estate in Shawnee county. No necessity appearing for the appointment of a guardian, none was appointed until several months after the appointment of Linker in Lincoln county. Why the appointment was made in Shawnee county does not appear. This guardian took no steps to find or administer upon the Lincoln county estate of his ward, or to do anything whatever as such guardian.

Healy left his family, a farm and personal property in Lincoln county. He might have wandered into a county where the court could not have ascertained even the place of his residence. In such a case the guardian would not have known where to look for the property or family, and the family would not have known where to apply for the service of a guardian. Many difficulties might be suggested which would make such a rule very inconvenient and objectionable. It may be said that these considerations belong to the legislature rather than to the court, and this would be true if the legislature had spoken in unmistakable terms upon this subject, but, as it has not done so, courts in choosing between interpretations of the statute may well consider such matters in determining the legislative intent. We conclude that Healy had a permanent residence, a home, family, and estate, real and personal, in Lincoln county. Becoming insane there, he could not change his residence.

The probate court of Shawnee county had juris-

diction of the person of Healy for the purpose of determining the question of his sanity only. Its adjudication of this question was final and conclusive everywhere and upon all persons. Under these circumstances the probate court of Lincoln county had jurisdiction to appoint a guardian to take possession of the estate, real and personal, belonging to such lunatic, and to represent his interests therein. Service upon such guardian, in any suit or proceeding in which the estate of such lunatic was involved, is binding upon such lunatic.

The fact of lunacy gives jurisdiction to the probate court where the lunatic resides and has an estate to appoint a guardian to represent the interests of such lunatic, but this jurisdictional fact of lunacy need not necessarily be first adjudicated by such court. It will be sufficient to accept and act upon any valid adjudication thereof.

The district court had jurisdiction of Healy in the foreclosure proceedings, and he is bound thereby. This conclusion makes it unnecessary to consider the other questions presented.

The judgment of the district court is reversed, with direction to enter judgment for the defendant, Timothy Foran, for costs.

All the Justices concurring.

---

## OPINION DENYING A PETITION FOR A REHEARING.
### (86 Pac. 470.)

#### SYLLABUS BY THE COURT.

1. INSANE PERSONS—*Jurisdiction of Probate Court.* Except as limited by the statutes, probate courts in this state have the same power over the person and estate of lunatics that was formerly possessed by courts of chancery under the common law.

2. ——— *Appointment of a Guardian—Notice.* In the absence of a statutory requirement no notice is necessary to confer authority upon a probate court to appoint a guardian for a lunatic who has been duly adjudged to be a person of unsound mind.

The opinion of the court was delivered by

GRAVES, J.: A petition for a rehearing has been filed herein which suggests that the opinion heretofore filed did not consider one of the vital questions involved in the case. It is urged that before the probate court of Lincoln county could appoint a guardian for the estate of Joseph Healy notice of such intended action must have been served upon him; that until service of such notice the court was without jurisdiction to consider such appointment, and any action taken was in violation of important constitutional rights and amounted to an arbitrary usurpation of power.

As the probate court of Lincoln county did make the appointment without such notice, this question is important. Upon a reexamination of the case we find that, while this specific question was suggested in argument, it was not seriously discussed and did not receive the attention in the opinion which it probably deserved, and we therefore deem it proper to consider it further at this time.

Courts of chancery have for centuries been regarded as the general guardians of infants, lunatics, and other incompetents, and have exercised their powers as such, through persons appointed by them for that purpose. The power of chancery courts in this respect has been generally recognized in this country the same as in England. From considerations of public convenience the powers of chancery courts in this respect have been by the statutes of most states conferred upon probate courts or other tribunals in each county. These local courts are generally recognized as possessing full chancery powers concerning the appointment of guardians, except where limited by the statute under which this duty is imposed. (1 Black. Com., Cooley's 4th ed., p. 464, note 1; 9 Encyc. Pl. & Pr. 890-892, and notes; *Fox v. Minor,* 32 Cal. 111, 116, 91 Am. Dec. 566; *Sprigg v. Stump,* 8 Fed. 207, 214.)

In the case of *The Board of Children's Guardians of Marion County v. Shutter,* 139 Ind. 268, 272, 34 N. E. 665, 31 L. R. A. 740, it was held that "the power to appoint guardians for infants, idiots, and lunatics, conferred by the statute, is merely declaratory of the power they already possessed." In the absence of statutory requirements no notice is necessary to confer authority upon a probate court to appoint a guardian, either for a minor or a lunatic who has been duly adjudged to be a person of unsound mind. (*Kurtz v. St. Paul & Duluth R. Co.,* 48 Minn. 339, 342, 51 N. W. 221, 31 Am. St. Rep. 657; *Swope's Adm'r v. Frazier's Committee* [Ky.], 37 S. W. 495; *Heckman v. Adams,* 50 Ohio St. 305, 34 N. E. 155; *Martin L. Leffel v. Henry C. Knoop,* cited in *Heckman v. Adams, supra,* but not reported; *Van Matre v. Sankey et al.,* 148 Ill. 536, 36 N. E. 628, 23 L. R. A. 665, 39 Am. St. Rep. 196.)

In the case of *Heckman v. Adams, supra,* the lunatic was regularly adjudged to be of unsound mind, and was sent to the asylum for the insane. Eight months afterward a guardian of her estate was appointed without notice. It was held that no notice was necessary, the statute not requiring it. The appointment was made because of the former adjudication, upon which the lunatic had notice.

By the appointment of a guardian for the estate of a person of unsound mind no constitutional right is involved. He is not thereby deprived of any property; on the contrary, his property is protected and preserved by the court, whose ward he is, through its officer, who has been required to give bond for the faithful and honest performance of his duty. In this state full authority has been conferred upon the probate courts to exercise this power. (Const. art. 3, § 8; Gen. Stat. 1901, § 155.) The statute confers this duty in broad and unrestricted terms. It reads:

"If it be found by the jury that the subject of the inquiry is of unsound mind, . . . the court shall

appoint a guardian of the person and estate of such person." (Gen. Stat. 1901, § 3945.)

It follows that whenever it is made to appear to the probate court that any person within its jurisdiction has been duly and legally found by a jury to be a person of unsound mind, it then becomes the duty of such court to appoint a guardian for such person. Usually the adjudication of lunacy and the appointment of a guardian take place in the same court and at the same time. In such a case notice is indispensable upon the question of lunacy, but when that fact is established the guardianship follows as a matter of course. There are cases which apparently hold that the appointment of a guardian should be after notice to the lunatic, but in all of these cases which have been brought to our attention the adjudication of lunacy occurred at the same time that the guardian was appointed and the notice was necessary on that account.

When the judgment of the probate court of Shawnee county was presented to the probate court of Lincoln county, as evidence that Joseph Healy was a person of unsound mind, that court decided the question of lunacy, just as every court determines the facts upon which its jurisdiction depends. If the Shawnee county court had appointed the guardian it would have acted upon the same evidence that was before the court in Lincoln county. Healy was never before the Shawnee county court for any purpose except to defend against the complaint of insanity.

Every probate court when it appoints a guardian for a person of unsound mind does so upon the findings of lunacy by the jury. No notice is ever given or necessary to answer as to whether a guardian shall be appointed. The petition for a rehearing is denied.

All the Justices concurring.