No. 31,117.

MATTHEW J. MORRISSEY, Guardian of the Estate of George Eberle, Incompetent, *Appellee,* v. J. M. RODGERS, as Probate Judge of Mitchell County, *Appellant.*

(21 P. 2d 359.)

Opinion filed May 6, 1933.

*Leon W. Lundblade,* of Beloit, for the appellant.

*R. L. Hamilton,* of Beloit, and *F. C. Radke,* of Lincoln, Neb., for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This is a proceeding in mandamus brought in the district court of Mitchell county, Kansas, by a resident of Nebraska, as guardian of an incompetent person, appointed as such by the county court of Lancaster county, Nebraska, against the probate judge of Mitchell county, Kansas, to compel him to issue a certificate of guardianship to the plaintiff and to direct the payment to him of the proceeds of two estates administered in the probate court of Mitchell county, in which the incompetent had already been found to be the sole heir.

An alternative writ was issued and a motion of the probate judge to quash it was denied. Defendant then filed an answer admitting the filing in the probate court of an authenticated copy of the appointment and qualification of the plaintiff by the court of Lancaster county, Nebraska, and an application for a certificate of guardianship from the probate court, and for authority to receive the money and property belonging to the incompetent from these estates, but denying that the incompetent, George Eberle, was or ever has been a resident of Nebraska, and the answer alleged he has continuously for the past fifty-three years been a resident of Mitchell county, Kansas, and further that because of his incompetency for more than a year past he had been unable mentally to make or effect a legal change of residence. The plaintiff moved for judgment on the pleadings. Pending the consideration of this motion the defendant offered evidence to show that the incompetent, George Eberle, was not a resident of Nebraska but was, and had been for many years past, a resident of Mitchell county, Kansas. Upon objection of the plaintiff the evidence was rejected and judgment was rendered for the plaintiff on the pleadings, and the peremptory writ was issued.

Two important propositions are presented for consideration. The first one is, Does the matter here sought to be directed and controlled by the writ involve the judicial discretion of the probate judge? If it does, then it cannot be controlled by mandamus. (R. S. 60-1701.)

"Mandamus being an extraordinary writ, with prerogative features, and not a writ of right, a strong case must be presented to coerce action by a judge, the presumption being that he has done his duty." (38 C. J. 613.)

The application of the plaintiff nonresident to be appointed guardian in this state, on the strength of his appointment made in Nebraska, was doubtless under the provisions of R. S. 39-218, the first part of which is as follows:

"The foreign guardian of any such nonresident person may be appointed the guardian of such person by the probate court of the county wherein he may have any property, for the purpose of selling or otherwise controlling any property of such person within this state. Such appointment may be made upon such guardian filing in the office of the probate judge of the county wherein there is any such property an authenticated copy of the order of his appointment; and he shall thereupon qualify like other guardians, except as hereinafter prescribed. . . ."

The exception referred to in the last sentence concerns the matter of dispensing with an additional bond. While the word "may" is used in the statute and not the word "shall," yet in usual and ordinary construction it would seem to imply the appointment of such applicant was the thing intended to be done. No alternative is provided. No provision is made for the appointment of another or different nonresident than the one certified as having been appointed there and having given bond. A resident would not, under the statute, be eligible for the appointment as guardian of a nonresident incompetent.

It is suggested in one of the briefs that the statute for similar purpose in case of a nonresident minor (R. S. 38-233) goes into greater detail and may assist in the determination of whether judicial discretion is involved. No one has pointed out any alternative or other feature on which the judge might properly exercise his discretion when such papers are properly presented for his action. His duty would appear to be none other than grant the application and make the appointment. Of course jurisdictional questions are always open, but they do not involve discretion, and it is judicial discretion that we are alone considering. Again, what did the defendant probate judge do? The record shows that all he did was to deny the application and appoint a local man guardian. There is no showing of any hearing or finding in the probate court as to George Eberle being an incompetent. That finding must have been taken or accepted from the Nebraska papers. It was held in the case of *Adams v. Specht,* 40 Kan. 387, 19 Pac. 812, that the appointment of a guardian for a minor was discretionary, but there it concerned the choice between the applicant and another person, as no doubt the Nebraska court used its discretion in selecting the plain-

tiff. This court said in the case just cited that such appointment was not subject to review on appeal.

The case of *State, ex rel., v. Norton,* 20 Kan. 506, is cited on this subject, it being a proceeding in mandamus to compel a probate judge to inquire into the sanity of a certain citizen who had been adjudged insane five years before and not restored, and the probate judge, having found and concluded that the records in his office showed the earlier finding of insanity and that it appeared to the court that she still remained insane, the petition was denied and it was held to involve judicial discretion and mandamus would not lie.

"The writ of mandamus may be granted to require a court to exercise its jurisdiction and proceed to a hearing, but it cannot be used to control the decision a court shall make nor require it to exercise judicial discretion in a particular way." (*Johnson v. Schoch,* 84 Kan. 884, 115 Pac. 638.)

Without saying that judicial discretion might not be exercised in cases similar in character to this one, we do say that no judicial discretion had been exercised by the probate judge in the case before him and none was required by either the alternative or the peremptory writ as issued, and we therefore hold that mandamus will lie in this case.

The second proposition here involved is, whether the matter of the residence of the incompetent was necessary to give to the Nebraska court jurisdiction before full faith and credit could be given to its judicial proceedings in the courts of this state.

The alternative writ states, in harmony with the motion for it, that George Eberle, the incompetent, was a resident of Lancaster county, Nebraska, and the answer denied that allegation and especially alleged his residence to be in Mitchell county, Kansas. This issue of fact was definitely before the district court when judgment was rendered for plaintiff upon the pleadings. It was also before the trial court of Mitchell county when the defendant offered to introduce evidence to show that the incompetent never was a resident of Nebraska. The court, on the theory of loyal adherence to the full-faith-and-credit clause of the constitution of the United States (art. 4, sec. 1), rejected all evidence as to the residence of the incompetent, and rendered judgment for plaintiff on the pleadings. These rulings would have been eminently proper on any and all questions that were passed upon by the Nebraska court except those on which its jurisdiction depended. The findings of the Nebraska court, whether right or wrong, on all other questions than those on

which its jurisdiction depended, are binding on the courts of a sister state, but unless that court in fact had jurisdiction of the case it was considering, its decrees and judicial proceeding have no binding force whatever. An order made by a court without jurisdiction is not entitled to recognition at home or full faith and credit in a sister state and can be attacked collaterally. It requires not only jurisdiction of the subject matter but also of the person. If it lacks either, it is not entitled to credit across the line, and jurisdictional questions can be raised at any time and by any party affected thereby. Suppose the finding of incompetency and appointment of a guardian had been made by a police court or a justice of the peace in Nebraska, it would not for a moment be entitled to credit across the state line nor at home, and any court where such order was presented not only could, but should, investigate as to the jurisdiction of the subject matter. The following ruling was made in *Swehla v. Malone,* 114 Kan. 712, 220 Pac. 299, which was a delinquent juvenile case:

"The judgment of the police court was open to collateral attack for lack of jurisdiction, and when its jurisdiction was challenged the absence of jurisdiction could be shown by extrinsic evidence." (Syl. ¶ 3.)

For the same reason and with the same prudence and caution any court asked to give full faith and credit to an order or decree of a sister state should inquire as to its jurisdiction of the person. The decisions and findings of the courts of sister states are not binding on these two questions as on others, and all courts to which orders or decrees come for any purposes whatever are not only privileged to investigate, but it is their duty to determine whether the foreign court had jurisdiction of the subject matter and also of the person.

". . . Where a court has jurisdiction of the subject matter of an action and has jurisdiction of the parties thereto, its orders and judgments as to all matters involved in the action are final and conclusive, unless corrected or modified on appeal. . . ." (*Rennolds v. Guthrie,* 103 Kan. 829, syl. ¶ 1, 177 Pac. 359.)

". . . As between the states of the United States, the full-faith-and-credit clause of the constitution and the legislation thereunder does not preclude an inquiry into the question of jurisdiction of the first court to render the judgment sought to be enforced in the second state. If there was no jurisdiction, the judgment is not entitled to faith and credit. A recital of jurisdictional facts in the record does not conclude the point. . . . If there was no jurisdiction over the person of the defendant, the action taken will not be entitled to recognition elsewhere." (Goodrich on Conflict of Laws, p. 459.)

Appellee cites a case very similar in many respects, that of *Trust Co. v. Allen,* 110 Kan. 484, 204 Pac. 747, similar even to its originating in the same county in Nebraska and the appointment of a guardian by the same court in that county for an insane person, but different in that the guardian there appointed undertook by habeas corpus to enforce the right of the guardian to the custody and care of the insane person who was then with a stepson in Butler county, Kansas. A guardian had also been appointed in Kansas on the same day the appointment was made in Nebraska. Both parties presented their credentials as guardian, and permanent residence of the insane woman was alleged by each party to be in a different place. The trial court heard testimony as to her residence and decided in favor of the Butler county guardian, largely because it seemed to be for the best interest, comfort and convenience of the insane person. This court reversed that ruling and granted the writ in favor of the Nebraska guardian, solely because the permanent residence of the insane person was, and had always been, in Nebraska. The second paragraph of the syllabus is as follows:

"The jurisdiction to appoint a guardian over the person and estate of a lunatic or person incompetent to manage his affairs, belongs exclusively to the state where such person has a permanent residence."

Another habeas corpus case is cited in this connection, *In re Wallace,* 75 Kan. 432, 89 Pac. 687, where it was held:

"Where the jurisdiction of the court depends upon a fact which the court is required to ascertain and decide its judgment determining that the fact does exist is conclusive evidence of jurisdiction until set aside or reversed by a direct proceeding." (Syl. ¶ 1.)

A study of the case shows it was not a finding as to jurisdiction of the person, but a question of fact concerning the age of a boy convicted and sent to the reformatory, the court sentencing him having found him to have been more than sixteen years of age, and in this case the father of the boy sought to set aside that judgment by showing the boy was less than fifteen years of age when convicted. The court held that the matter of his age was not only a jurisdictional fact but also a litigated fact. It was much like the litigated fact in the divorce case cited, *Miller v. Miller,* 89 Kan. 151, 130 Pac. 681, where the husband brought his action for divorce in Utah, alleging his residence in that state for the required length of time, viz., one year, and it was one of the facts necessary to be

proved, and was held to have been conclusively determined and could not later be attacked collaterally in an ejectment action. The same ruling was made as to another proceeding, in *Larimer v. Knoyle*, 43 Kan. 338, 23 Pac. 487, where an attempt was made to show that the affidavit and the publication notice for service on the defendant in a divorce proceeding were untrue. In the case of *Tomlinson v. Tomlinson*, 121 Kan. 206, 246 Pac. 980, both these matters last mentioned were included in the divorce decree, viz., the truthfulness of the affidavit for service on the defendant by publication and the residence of the plaintiff. Both facts that did not strictly concern the jurisdiction of the court because the court approved the process for publication and the plaintiff by his own act in filing his petition gave the court jurisdiction of himself, even if his statement as to residence might not have been correct when the court had found it to be correct. Another divorce case cited is *McCormick v. McCormick*, 82 Kan. 31, 107 Pac. 546, where, in an action by the wife for alimony, the defense was that a decree of divorce had been granted the husband in Missouri. The Missouri decree was upheld by this court as against criticism and intimations of fraud, and it was said in the opinion:

"When jurisdiction has attached, the fraud of a party in procuring an irregular exercise of jurisdiction does not destroy jurisdiction, and nothing but want of jurisdiction is available on collateral attack." (p. 39.)

The same rule prevails as to the necessity of the court of a sister county having jurisdiction of the person in all kinds of cases as applies to the courts of sister states before full faith and credit is entitled to be given to their judgments and decrees.

The following cases show conclusively the absolute want of jurisdiction unless the incompetent person, the minor or the deceased person in question was an actual and permanent resident of the state or county where the court is held, and judgments rendered or orders made without jurisdiction of the person are subject to collateral attack, whenever and wherever attempted to be enforced:

"Jurisdiction to appoint a guardian over the person and estate of a lunatic belongs exclusively to the probate court of the county where such lunatic has a permanent residence." (*Foran v. Healy*, 73 Kan. 633, syl. ¶ 1, 85 Pac. 751.)

"The probate court of the minor's residence is the only court which has jurisdiction to appoint a guardian of the estate of such minor." (*Jaggar v. Rader*, 134 Kan. 570, syl. ¶ 3, 7 P. 2d 114.)

"The place of residence of the deceased at the time of his death is an

essential, collateral, jurisdictional question of fact. This fact is not conclusively established by the appointment of an administrator, the issuance of letters of administration, the probating of a will, or by any other decision in reference to the estate of the deceased which a probate court may make; and, in a proper collateral action or proceeding, the true place of residence of the deceased at the time of his death may be shown for the purpose of disproving jurisdiction in the court assuming to administer the estate." (*Ewing v. Mallison,* 65 Kan. 484, syl. ¶ 3, 70 Pac. 369.)

"A probate court is without authority to appoint an administrator of the estate of a deceased person unless the deceased was a resident of the county of the court at the time of his death, and a decision of a probate court that the deceased was a resident of the county of the court at the time of his death is open to collateral inquiry for the purpose of showing a lack of jurisdiction to make the appointment." (*Dresser v. Bank,* 101 Kan. 401, syl., 168 Pac. 672.)

"The fact that the earlier Ohio will had been admitted to probate and letters testamentary had been issued by the probate court of Marshall county and that no appeal from such order was made within one year or later, did not preclude the district court of Linn county from determining the essential, collateral, jurisdictional question of fact as to the place of residence of the testatrix at the time of her death. . . ." (*Edington v. Stine,* 135 Kan. 173, syl. ¶ 2, 10 P. 2d 27.)

The district court should have heard the offered evidence as to the permanent residence of George Eberle, the incompetent, so as to know if the Nebraska court had jurisdiction of the person as well as of the subject matter and should not have rendered judgment on the pleadings when this jurisdictional question was at issue in them. Another matter mentioned in the briefs as being covered by the offered evidence is well discussed in *Trust Co. v. Allen,* supra, on page 490, which relates to the mental ability of an incompetent to have or exercise an opinion as to a desired change of residence.

The judgment is reversed and the writ is denied. The cause is remanded with instructions to hear evidence as to the permanent residence of the incompetent person so as to determine the question of jurisdiction of the Nebraska court over the person of the incompetent.

HARVEY, J. (dissenting): My understanding of the record in this case and my ideas as to the judgment which should be rendered differ so widely from those expressed in the opinion of the court that I deem it proper for me to state my views, as follows: We may begin with the facts shown by the record, that L. M. Kagey was administrator—having been appointed by the probate court of Mitchell county, Kansas—of the estate of Lizzie Nippert and Opal

Nippert, both deceased; that he had completed the administration of those estates and made his final report, which showed that he had on hand $8,915.46 which should be turned over to George Eberle, sole heir of the decedents. About the time that final report was made, and on March 21, 1932, Matthew J. Morrissey filed in the probate court of Mitchell county an application for an order that this money be paid to him as guardian of the person and estate of George Eberle. The application recited that he had been duly appointed, had qualified, and was acting as guardian of George Eberle, incompetent; that George Eberle is a resident of Lancaster county, Nebraska, of which place the guardian is also a resident; that on February 18, 1932, in a court of competent jurisdiction of Lancaster county, Nebraska, George Eberle was adjudged incompetent, and that Matthew J. Morrissey was appointed as his guardian. Attached to this application was a duly certified copy of the proceedings in the Nebraska court. This included the petition presented to that court in which it was alleged that George Eberle is a resident of Lancaster county, Nebraska; that he is seventy-five years of age and suffering from mental and physical infirmities incident to advanced age, and is therefore incompetent to take charge of and manage his business affairs. There was notice, a hearing, a finding that George Eberle was a resident of Lancaster county, Nebraska; that by reason of his mental incompetency it was necessary to have a guardian appointed for his estate; that Matthew J. Morrissey was appointed, letters of guardianship were issued to him, he took oath, gave bond and qualified as such guardian.

Perhaps on the same day, March 21, 1932, L. M. Kagey filed in the probate court of Mitchell county an instrument denominated "Application for appointment of guardian," in which it was recited that as administrator of the estates mentioned he had in his hands for distribution to George Eberle the sum of $8,915.46 subject to the order of the court; that on February 18, 1932, Matthew J. Morrissey, of Lancaster county, Nebraska, was appointed guardian of the person and estate of George Eberle. A copy of the proceedings of the Lancaster county, Nebraska, court was attached and marked "exhibit A"; "That because of said proceedings, as shown by 'exhibit A,' your petitioner, L. M. Kagey . . . asks the court that Matthew J. Morrissey, or some other suitable person, be appointed guardian of said estate in Mitchell county, and that your

petitioner be ordered to disburse said funds to said guardian so appointed by this court."

On March 25, 1932, the court made an order, as shown by the entry in his journal, "the court finds from the evidence that the application of Matthew J. Morrissey asking that he be appointed guardian of the person and estate of George Eberle in Mitchell county should be denied . . . and said George F. Eresch is appointed guardian," presumably upon the application of L. M. Kagey.

It should be noted that Matthew J. Morrissey had not asked that he be appointed by the probate court of Mitchell county as guardian of the person and estate of George Eberle in Mitchell county. What he had asked was that the court make an order for the administrator, L. M. Kagey, to turn the money in his hands belonging to George Eberle to him as guardian of George Eberle.

It should be noted also that no question appears to have been raised in the probate court in Mitchell county as to the validity of the appointment by the Lancaster county, Nebraska, court of Matthew J. Morrissey as guardian of George Eberle. It should be noted also that the application for appointment as guardian, signed by L. M. Kagey, did not allege that George Eberle was a resident of Mitchell county, Kansas, nor that he was incompetent, nor did it allege facts showing that the probate court of Mitchell county, Kansas, had jurisdiction to appoint a guardian for George Eberle, nor any reason why such a guardian should be appointed other than "because of said proceedings, as shown by 'exhibit A.' " These proceedings show a guardian had been appointed in Nebraska for George Eberle, a resident of that state, and because of his incompetency, as found by a proper court of that state.

This mandamus action was filed in the district court March 28, 1932. In the motion for the writ plaintiff recited the facts and asked that a writ issue compelling defendant "to allow the application and petition of the plaintiff and order said funds of said George Eberle, incompetent, delivered to the plaintiff."

It is my judgment that the proceeding in mandamus should be limited to an order directing the probate court to pass upon and decide the application of Matthew J. Morrissey that an order be made for the administrator, L. M. Kagey, to pay the funds in his hands belonging to George Eberle to plaintiff as guardian of George

Eberle. The probate court of Mitchell county never passed on that application. It should do so. If the application were denied I see no reason why the applicant could not appeal from the order denying it, and I regard that as the proper procedure. Since no issue had been raised in the probate court of the validity of the appointment of plaintiff as guardian of the estate of George Eberle by the Lancaster county, Nebraska, court, the validity of that appointment should have been recognized. The probate court of Mitchell county had no petition before it setting forth jurisdictional facts which would justify or authorize it to appoint a guardian for the estate of George Eberle, nor was there any sufficient notice or hearing to justify such appointment.

Mandamus does not lie to require the probate court to decide a matter pending before it in a particular way, but it is an appropriate remedy to require a decision, and this case should be limited to that.

The judgment of the court below should be modified in harmony with these views.

DAWSON, J., concurs in this dissent.