No. 48,947

NATIONAL EQUIPMENT RENTAL, LTD., *Appellant,* v. WILLIAM E. TAY-
LOR d/b/a LIBERAL IMPORT CENTER, *Appellee.*

(587 P.2d 870)

Opinion filed December 9, 1978.

*Bert Hopper,* of Ramey & Hopper, of Liberal, argued the cause and was on the brief for the appellant.

*Douglas Miller,* of Bryan & Miller, of Liberal, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an appeal by plaintiff National Equipment Rental, Ltd. (hereinafter referred to as National) from an order of dismissal granted on the motion of the defendant, William E. Taylor d/b/a Liberal Import Center (hereinafter referred to as Taylor). The action is based on a foreign judgment entered by default against Taylor by the Supreme Court of New York, Nassau County. The trial court granted the motion on the grounds that there were "insufficient contacts with the Defendant for the New York court to acquire jurisdiction and the contract purporting to grant such jurisdiction was commercial paper between the Defendant required by a Florida corporation with whom he did business." The trial court further adopted the defendant's brief as the court's findings of fact and conclusions of law.

The factual situation in this case is complex and must be set forth in some detail in order to understand the issues presented before this court. It should be noted that the facts do not appear to be seriously in dispute. Early in 1974 Taylor entered into negotiations with a corporation by the name of E. Q. Muffler, Inc., of Dadeland, Florida, for the acquisition of a franchise to establish

an E. Q. Muffler shop within an exclusive territory. E. Q. Muffler sold franchises for the operation of such shops. On April 24, 1974, the negotiations concluded and Taylor entered into a contract with E. Q. Muffler. By the terms of the agreement, Taylor received an exclusive territory to operate E. Q. Muffler shops and was to receive a training program, parts, supplies, advertising, and a pipe bending machine. Taylor was to pay $1,500 initially with the "balance by lease." All of these negotiations and the resultant contract were between Taylor and E. Q. Muffler, Inc., a Florida corporation. The pipe bending machine was received by Taylor, and subsequently Taylor received from E. Q. Muffler a form lease agreement for the pipe bending machine. Taylor read it, signed it, and mailed it back to E. Q. Muffler in Florida. The lease was on a printed form provided E. Q. Muffler by National and was a lease between Taylor and National. At this time, defendant had had no personal dealings with National. Taylor made the first few payments on the lease to E. Q. Muffler in Florida and then received notice that all future payments were to be made to National in New York. In accordance with the notice, Taylor sent his later payments to New York. E. Q. Muffler subsequently failed to comply with its obligation under the franchise agreement, and Taylor ceased making lease payments. Taylor filed suit and obtained a default judgment against E. Q. Muffler in the Seward County District Court in the amount of $91,875.22. Shortly thereafter, E. Q. Muffler, Inc., went into bankruptcy and Taylor received nothing from his judgment.

National subsequently filed suit against Taylor in New York on the lease agreement for the pipe bending machine, plus attorney's fees. Summonses were sent certified mail to Taylor (one to Taylor individually and one to Taylor d/b/a Liberal Import Center, both being mailed the same day) but were returned "unclaimed." This is to be distinguished from being returned as "refused." Taylor testified that he had no knowledge of the existence of the certified letters and there was no evidence in opposition to this statement. The summonses were sent to Taylor October 15, 1975. On December 22, 1975, National took a default judgment against Taylor in New York in the amount of $15,004. On June 24, 1976, the foreign judgment was filed in Seward County District Court under the provisions of the Uniform Enforcement of Foreign Judgments Act, K.S.A. 60-3001 et seq. Taylor filed a motion to dismiss which was granted on November 5, 1976.

The lease agreement between Taylor and National contained the following provisions:

"4. EXECUTION; LAWS GOVERNING; SERVICE: This lease shall only be binding when accepted by the Lessor at its North New Hyde Park, N. Y. office and shall be deemed to have been made in Nassau County, New York and shall be governed by the laws of the State of New York except for local recording statutes. As part of the consideration for the Lessor's executing this lease, Lessee agrees that all actions or proceedings arising directly or indirectly from this lease shall be litigated only in courts having situs within the State of New York and the Lessee hereby consents to the jurisdiction of any local, state or federal court located within the State of New York and waives personal service of any and all process upon the Lessee herein, and consents that all such service or process shall be made by certified mail, return receipt requested, directed to the Lessee at the address hereinabove stated; and service so made shall be complete two (2) days after the same shall have been posted as aforesaid."

Generally, foreign judgments are accepted by the courts of this state. The general rule relative to foreign judgments is set forth in *Fischer v. Kipp,* 177 Kan. 196, 197-198, 277 P.2d 598 (1954):

"[A] properly authenticated judgment rendered by a court of one state is, under the full faith and credit clause of the United States Constitution, Article 4, Section 1, entitled in the courts of another state to the force, the effect, and the full faith and credit, it has by law in the courts of the state where the judgment was rendered."

However, the full faith and credit clause does not preclude an inquiry into the sister state's jurisdiction over the subject matter or person. *Morrissey v. Rodgers,* 137 Kan. 626, Syl. ¶ 2, 21 P.2d 359 (1933). Where jurisdiction is determined to be lacking, the foreign judgment is void and is not entitled to full faith and credit.

It is well settled that parties may contract to agree to subject to jurisdiction and to the type of service. *National Rental v. Szukhent,* 375 U.S. 311, 11 L.Ed.2d 354, 84 S.Ct. 411 (1964). K.S.A. 1977 Supp. 84-1-105 provides:

"(1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this act applies to transactions bearing an appropriate relation to this state."

The official UCC comment states:

"1. Subsection (1) states affirmatively the right of the parties to a multi-state transaction or a transaction involving foreign trade to choose their own law. That right is subject to the firm rules stated in the five sections listed in subsection (2),

and is limited to jurisdictions to which the transaction bears a 'reasonable relation.' In general, the test of 'reasonable relation' is similar to that laid down by the Supreme Court in Seeman v. Philadelphia Warehouse Co., 274 U.S. 403, 47 S.Ct. 626, 71 L.Ed. 1123 (1927). Ordinarily the law chosen must be that of a jurisdiction where a significant enough portion of the making or performance of the contract is to occur or occurs. But an agreement as to choice of law may sometimes take effect as a shorthand expression of the intent of the parties as to matters governed by their agreement, even though the transaction has no significant contact with the jurisdiction chosen."

New York has adopted the identical UCC provision. N.Y. U.C.C. § 1-105 (McKinney).

In the case before us we have a contract between a resident of Kansas and a resident of New York. The contract was accepted and executed in New York by National. Payments on the contract were made by the Kansas resident to the resident of New York. The transaction bears a reasonable relation to the State of New York. Parties had the right to agree that New York would be the forum for determining any disputes arising out of the contract. The trial court's finding that there were insufficient contacts by the Kansas resident with the State of New York for the New York court to acquire jurisdiction was erroneous as applied to jurisdiction of the subject matter.

This determination, however, does not fully determine the issues before the court. There is also the issue of whether the New York court properly acquired jurisdiction over Taylor. The pertinent provision of the contract is as follows:

"[T]he Lessee . . . waives personal service of any and all process upon the Lessee herein, and consents that all such service or process shall be made by certified mail, return receipt requested, directed to the Lessee at the address hereinabove stated; and service so made shall be complete two (2) days after the same shall have been posted as aforesaid."

The lessee by this provision waived personal service and consented to substituted service by certified mail, return receipt requested. There was no waiver of the right to actual notice. National contends that the service was complete two days after the certified letters were mailed. Such an interpretation destroys the clear intent that actual notice of the suit be imparted. The New York court found that the summons and verified complaint had been personally served on William E. Taylor d/b/a Liberal Import Center. This is contrary to all the evidence in the case. The return receipts for both notices were returned "unclaimed."

The letters were stamped with a series of blanks for "reason checked" and "unclaimed" was checked in both instances with "refused" being left blank. The only evidence of delivery or lack thereof was the date stamped on the envelopes themselves and the testimony of Taylor who categorically denied receipt of the letters or any knowledge of their existence. We must therefore conclude that the New York court never obtained jurisdiction over Taylor and, accordingly, its judgment is void and is not entitled to full faith and credit.

If a trial court renders a correct judgment under the facts and the law, the judgment will not be disturbed merely because the wrong reasons are given for its rendition. *Boldridge v. Estate of Keimig,* 222 Kan. 280, 564 P.2d 497, *cert. denied* 434 U.S. 967 (1977). The trial court reached the right decision in this case although said decision was predicated on the wrong grounds. The judgment will not be disturbed.

The judgment is affirmed.