**ALEXANDER & ALEXANDER, INC., Plaintiff,**

v.

**Richard P. FELDMAN, Defendant.**

**Civil Action No. 95–2533–GTV.**

United States District Court, D. Kansas.

Jan. 30, 1996.

Daniel M. Dibble, William C. Odle, Lathrop & Gage, L.C., Kansas City, MO, for plaintiff.

John C. Frieden, S. Eric Steinle, Frieden, Haynes & Forbes, Topeka, KS, for defendant.

Lawrence A. Rouse, Scott M. Brinkman, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for movant.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This matter is before the court on plaintiff's motion for preliminary injunction (Doc. 2). Defendant has responded (Doc. 22) and opposes plaintiff's motion.

This action involves a dispute concerning a noncompetition clause in an employment contract. Following a hearing before the court and after careful consideration of the evidence and arguments in this case, the court concludes that plaintiff is not entitled to a preliminary injunction for the reasons explained in this order.

Pursuant to Fed.R.Civ.P. 52(a), the court makes the following findings of fact and conclusions of law.

### I. Findings of Fact

1. Plaintiff Alexander & Alexander, Inc. is a Maryland corporation with its principal place of business in Owings Mills, Maryland. Plaintiff is a citizen of the state of Maryland.

2. Defendant Richard P. Feldman is an individual residing in Topeka, Shawnee County, Kansas. Defendant is a citizen of the state of Kansas.

3. The court has diversity jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $50,000, exclusive of interest and costs.

4. Venue is proper in this court pursuant to 28 U.S.C. § 1391(a) because plaintiff's claims are alleged to have arisen within the District of Kansas.

5. Plaintiff is engaged in the insurance brokerage business. Plaintiff's income generates from various commissions and fees it receives from the sale of insurance coverage.

6. Defendant is an insurance agent/producer who has worked for various insurance brokerage companies for the past twenty-two years. Defendant is currently employed as an agent/producer for Insurance Management Associates of Topeka, Inc.

7. As an insurance agent/producer, defendant sells property/casualty insurance to customers he solicits. Within the property/casualty field, defendant has developed a specialty in placing insurance for agricultural businesses.

8. In working with agricultural businesses, defendant determines the best and most cost effective coverage for his clients, and assists them in obtaining insurance from the different insurance carriers in the field.

9. Defendant initially worked for the Hussy Insurance Agency in Topeka, Kansas. In 1988, Financial Guardian of Kansas City, Inc. ("Financial Guardian") acquired Hussy Insurance Agency. At that time, defendant became an employee of Financial Guardian.

10. On January 1, 1989, defendant entered into an employment contract with Financial Guardian. Defendant agreed to all the terms in the 1989 contract, including an addendum that based his renumeration on a base salary plus commissions. Defendant's commissions were based on a percentage of business generated by his individual efforts.

11. The body of defendant's employment contract contains all material terms relevant to his employment with Financial Guardian except for his renumeration, which was set forth in an Addendum that provided for his compensation for the following year.

12. Defendant executed a second employment contract with Financial Guardian on January 1, 1990. Although the essential terms of the contract remained unchanged, Financial Guardian revised the Addendum to the contact regarding the amount of defendant's compensation. Under the new Addendum, however, defendant continued to be compensated with a base salary plus commissions calculated on defendant's individual production.

13. As a part of defendant's 1990 employment contract, he agreed in section 7 to protect his employer's business and property:

(a) Employee agrees that Employee will not, either during the term of employment hereunder, or within two (2) years

following termination of such employment, disclose to any person, firm, partnership, association or corporation, the names or addresses or any other business information concerning any business, customer or account which shall be on the books of Employer during the course of Employee's employment hereunder....

(b) For a period of three (3) years from the termination of employment, regardless of the reason, cause or occasion for such termination, Employee agrees that Employee will not, directly or indirectly, by an for Employee, or as the agent of another, or through others as Employee's agent, in any manner whatsoever during said two (2) year period next following the date of such termination, not including any periods during which Employee may be adjudged to be in violation of this Agreement, procure, solicit, canvass, accept, service, aid another in, or be connected with the procurement, solicitation or acceptance of insurance policies, application or inquiries about insurance from any person, firm corporation or association which, at the time of termination of Employee's employment with Employer or which at any time within twelve (12) months prior thereto, was insured by a policy or policies sold or serviced by Employer or was being actively quoted or solicited by Employer.[1]

14. Section 9 of defendant's employment contract also provides that the "rights, benefits and obligations of Employer under this Agreement shall be transferrable, and all covenants and agreements hereunder shall inure to the benefit of and be enforceable by, or against, its successors and assigns."

15. Defendant's employment contract contains a Missouri choice of law clause as set forth in Section 11.

16. Defendant's employment contract also contains a mutual consent to modification clause. Section 10 provides that "[t]his Agreement constitutes the entire understanding between both parties hereto relative to employment, and no amendment or modification of its terms shall be valid or binding upon either party unless reduced to writing and signed by both parties hereto...."

17. Defendant's employment contract further contains a non-waiver provision. Section 8 provides that "[t]he waiver of either party of a breach of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach hereunder."

18. In May 1990, Jardine Insurance Brokers Kansas City, Inc. ("Jardine") acquired Financial Guardian. Financial Guardian assigned its rights and obligations under defendant's employment contract to Jardine. In 1994, Jardine merged with a sister corporation to form Jardine Insurance Brokers Midwest, Inc.

19. In January 1991, Jardine submitted a new renumeration addendum to defendant which increased his base salary and continued compensating him on a commission basis for his individual production. Defendant signed this addendum.

20. Jardine submitted another compensation addendum to defendant in January 1992. This addendum proposed a change in defendant's method of compensation from a base salary plus commission to a monthly salary plus profit share bonus. Instead of the bonus being based on defendant's individual production, Jardine proposed to compensate defendant on the success of the company as a whole. Jardine imposed this method of compensation on all insurance agents/producers in the company.

21. Defendant refused to sign Jardine's 1992 proposed compensation addendum because he objected to the new method, manner, and amount of compensation that Jardine offered. However, defendant continued his employment relationship with Jardine.

22. After defendant refused to sign the 1992 proposed compensation addendum, Jardine did not submit additional annual compensation addendum proposals to defendant for 1993, 1994, or 1995. During this time period, Jardine unilaterally continued to

---

1. The court notes a discrepancy within this clause concerning the duration of the noncompetition period. However, the duration of the non-compete agreement is not important in the court's analysis of the instant action.

modify the amount, method, and manner of defendant's compensation, and each modification differed from defendant's last signed compensation addendum in 1991. Defendant objected to each subsequent modification of his compensation package, but he remained employed with Jardine.

23. Defendant accepted compensation on a salaried basis as unilaterally set by Jardine for nearly four years. Additionally, during this time period, Jardine compensated defendant for his business expenses and provided other fringe benefits as provided in defendant's 1990 employment contract.

24. Jardine revised its personnel policies in October 1994. Its new policy was applicable to defendant and included an employment-at-will clause which provided:

Jardine is an At-Will Company and either the employee or the employer can terminate the employment relationship at any time, with or without notice, and with or without cause. No one has authority to make representations inconsistent with this policy. This policy supersedes all written and oral representations that are in any way inconsistent with it.

25. On September 8, 1995, Alexander & Alexander Services, Inc. purchased Jardine Insurance Brokers Midwest, Inc., and acquired substantially all of the assets of its retail insurance brokerage business in Kansas City, Missouri, including its Topeka, Kansas, office. On October 12, 1995, Alexander & Alexander Services, Inc. closed on its purchase of Jardine Insurance Brokers Midwest, Inc.

26. Among the assets that Alexander & Alexander Services, Inc. acquired from Jardine Insurance Brokers Midwest, Inc., were the employee agreements between Jardine and its employees, including that of the defendant.

27. Alexander & Alexander Services, Inc. executed an Assignment and Assumption Agreement with plaintiff Alexander & Alexander Inc. on October 11, 1995. Defendant's employment contract was assigned to plaintiff pursuant to this agreement.

28. During a meeting with plaintiff after the announced acquisition of Jardine, defendant learned that plaintiff intended to unilaterally change the method, manner, and amount of his compensation. Defendant again voiced objection to any variation of the 1991 compensation addendum to his employment contract.

29. Dissatisfied with the perceived "take it or leave it" compensation offer, defendant tendered his resignation to plaintiff in writing on November 22, 1995.

30. Following his resignation, defendant began employment with Insurance Management Associates, a competitor of plaintiff.

31. While employed by Jardine, and subsequently by plaintiff, defendant had access to confidential information. This information included preferred client information not generally known in the industry, as well as business strategies and other proprietary information. Defendant also had access to client applications for underwriting and renewals, client lists and related client information, and marketing strategies of Jardine and plaintiff.

32. Defendant testified that he left plaintiff's offices after his termination with a number of documents. Those documents included a copy of his roledex containing his client list, client renewal applications, and related client information.

33. Defendant further testified that he immediately began contacting over ninety of plaintiff's clients and invited them to shift their business to his new employer. Those clients were customers that defendant had serviced both directly and indirectly within the two years prior to his termination with plaintiff.

34. As a result of defendant's departure, a significant number of clients that defendant solicited have moved their business to his new employer. On November 27, 1995, plaintiff began receiving "Broker of Record" letters from clients requesting that defendant and Insurance Management Associates be their new agent of record. Plaintiff's resident vice-president, James Hill, testified that plaintiff has received letters from a vast majority of clients solicited by defendant.

35. Mr. Hill also testified that plaintiff has lost gross commissions and fees for business that has moved with defendant to Insurance Management Associates in the amount of approximately $288,000.00.

## II. Conclusions of Law

Plaintiff seeks the court's order of preliminary injunction to maintain the status quo until resolution of this action at trial. Plaintiff claims that defendant's actions in contacting, soliciting and servicing plaintiff's customers since terminating his employment with plaintiff are in violation of the non-compete provision contained in his employment contract.

▮ To obtain a preliminary injunction, plaintiff bears the burden of satisfying four elements:

(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued would not be adverse to the public interest.

*Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). The determination of whether plaintiff satisfies the elements rests with the court's sound discretion. *Id.; see also Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1360 (10th Cir.1990) (district court's grant of a preliminary injunction reversed "only for abuse of discretion"); *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181 (10th Cir.1975).

For a preliminary injunction to issue, plaintiff first must demonstrate a "reasonable probability of success" on the merits.[2] *Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255, 261 (10th Cir.1981). Plaintiff claims that there is a reasonable probability that it will succeed on its breach of contract claim against defendant because it is the assignee of a valid and enforceable noncompetition agreement that defendant executed. The court disagrees.

▮ The court first must determine which state's substantive law governs interpretation of the employment contract. In a diversity action, the court must apply "the substantive law of the forum state." *Commercial Union Ins. v. John Massman Contracting*, 713 F.Supp. 1403, 1404–05 (D.Kan. 1989) (citations omitted). Because plaintiff seeks to enforce a covenant not to compete, this action is properly characterized as a contract action. Under its choice of law rules, Kansas courts follow the general rule "that the place where the contract is made controls its interpretation." *Equifax Servs., Inc. v. Hitz*, No. 91–3109, 1992 WL 163282, at *3 (10th Cir.1992) (citing *Frasher v. Life Investors Ins. Co.*, 14 Kan.App.2d 583, 796 P.2d 1069, 1071 (1990), for rule of lex loci contractus).

In the instant action, defendant testified that the last act necessary for contract formation, his signing of the 1990 employment contract, occurred when he executed the agreement in his Topeka, Kansas, office. This step finalized the employment agreement between defendant and Financial Guardian. Thus, Kansas law governs the contract's interpretation.

▮ Defendant's employment contract contains a choice of law provision. Section 11 provides that Missouri contract law shall govern. Kansas courts permit choice of law provisions to control if the transaction at issue has a "reasonable relation" to that state. *National Equip. Rental, Ltd. v. Taylor*, 225 Kan. 58, 587 P.2d 870 (1978); *see also Atchison Casting Corp. v. Dofasco, Inc.*, 889 F.Supp. 1445, 1455 (D.Kan.1995). In determining if a valid employment contract exists between plaintiff and defendant, the court concludes that Missouri contract law governs.

▮ The parties do not dispute that in January 1990, defendant executed an em-

---

**2.** The court notes that the Tenth Circuit relaxes this standard when the movant satisfies the remaining three elements of its prima facie case. *Lundgrin*, 619 F.2d at 63 (sufficient for movant to demonstrate that a "fair ground for litigation" exists). In this action, it is unnecessary for the court to address the remaining three elements because the court finds that plaintiff fails to satisfy the first element even under the more liberal standard.

ployment contract with Financial Guardian. This contract was mutually modified by Financial Guardian's successor, Jardine, and defendant in January 1991 with a new compensation addendum. Defendant's employee contract contains a noncompetition provision that prohibits him from procuring, soliciting, canvassing, accepting, or servicing Jardine's customers, or the customers of its assigns, for three years following the termination of his employment. Assuming a valid employment contract exists, the assignment clause in defendant's contract grants plaintiff the right to enforce this non-compete clause for its benefit.

 Missouri law recognizes an employer's right to enforce a non-compete covenant in equity if the contract is reasonably limited in duration and geographic area, necessary to protect the "legitimate contract rights and interests of the parties, and not contrary to public policy." *Willman v. Beheler,* 499 S.W.2d 770, 777 (Mo.1973). Defendant does not dispute the reasonableness of the restraints provided in the noncompetition clause of his contract.[3] Rather, defendant maintains that plaintiff does not possess a valid and enforceable contract because of Jardine's, and later the plaintiff's, unilateral change in his compensation package.

 To recover upon a contract, plaintiff first must demonstrate its own performance. *Navato v. Sletten,* 560 F.2d 340, 346 (8th Cir.1977) (interpreting a Missouri employment contract). Plaintiff cannot recover for defendant's violation of the non-compete provisions of the employment contract if plaintiff was the first to breach the contract. *Luketich v. Goedecke, Wood & Co.,* 835 S.W.2d 504, 507 (Mo.Ct.App.1992); *Smith–Scharff Paper Co., Inc. v. Blum,* 813 S.W.2d 27, 28–29 (Mo.Ct.App.1991); *Forms Manufacturing, Inc. v. Edwards,* 705 S.W.2d 67, 69 (Mo.Ct.App.1985); *S.G. Adams Printing v.*

*Central Hardware Co.,* 572 S.W.2d 625, 629 (Mo.Ct.App.1978).

Defendant's employment contract expressly prohibits unilateral modification of its terms. Section 10 of the contract provides that the writing embodies the entire understanding between the parties and that "no amendment or modification of its terms shall be valid or binding upon either party unless reduced to writing and signed by both parties hereto." Financial Guardian and defendant executed a compensation addendum in 1990, and it was mutually modified by Jardine and defendant in 1991. In 1992, Jardine offered defendant yet another compensation addendum. Defendant objected to the 1992 addendum and he did not sign it. Jardine ignored defendant's objection to the addendum and unilaterally changed the amount, manner and method of defendant's compensation. Jardine also unilaterally changed defendant's compensation package in 1993 and 1994. Upon succeeding to Jardine's interest in defendant's employment contract in September 1995, plaintiff informed defendant that it would unilaterally change his compensation package.

Each of those actions by Jardine and the plaintiff were in contravention of the express terms of defendant's employment contract. Section 10 of defendant's employment contract is similar to the language contained in the employment contract in a recent Missouri case where the defendant executed an employment agreement that prohibited the parties from modifying any of the agreement's terms without the consent of both parties in writing. *Blum,* 813 S.W.2d at 28 (plaintiff informed defendant that it was unilaterally changing his compensation arrangement, and that defendant could accept the new compensation or terminate his employment). The Missouri Court of Appeals found that there was sufficient evidence for the trial court to

---

**3.** Defendant does take exception to plaintiff's inclusion of an additional claim under the Kansas Uniform Trade Secrets Act during the preliminary hearing that was not included in its original motion for preliminary injunction. The court notes that plaintiff's motion for preliminary injunction and its verified complaint do not contain any reference to a request for injunctive relief under this Act. Plaintiff's counsel stipu-

lated at the hearing on its motion for preliminary injunction that it was seeking the court's order of injunctive relief to prevent the defendant from contacting, soliciting, or servicing plaintiff's customers in violation of the non-compete provisions of his employment contract. Thus, the court will not consider plaintiff's untimely additional claim.

conclude that plaintiff "unilaterally breached defendant's employment agreement," and plaintiff could not now seek to enforce defendant's covenant not to compete. *Id.* at 29.

The court finds that there is sufficient evidence to establish that plaintiff and its predecessors in interest unilaterally changed defendant's compensation without obtaining defendant's signed approval. Plaintiff's actions, and those of Jardine, violate the express provisions of defendant's employment contract. Since plaintiff and its predecessors in interest were the first to breach defendant's employment contract, the court concludes that defendant could repudiate the agreement and accept employment free of the noncompetition provisions contained in the agreement.

■■■ Plaintiff argues that even if it or Jardine were the first to breach defendant's employment contract, the contract is still valid because defendant waived the breach. Under Missouri law, a party "who waives a breach of contract cannot set it up in justification of his own breach." *Long v. Huffman*, 557 S.W.2d 911, 915 (Mo.Ct.App.1977) (citations omitted). Plaintiff contends that defendant continued accepting the benefits of the employment contract for more than four years after Jardine first breached the contract. Generally, plaintiff's acceptance of the benefits of his employment contract after the breach would estop him from questioning "the existence, validity, and effect of the contract from which they derive." *Id.*; *Chemical Fireproofing Corp. v. Bronska*, 542 S.W.2d 74, 79 (Mo.Ct.App.1976) (employee cannot "chew up the sweet and spit out the bitter").

In the instant action, however, the court finds that the evidence establishes that defendant did not waive Jardine's and plaintiff's breach of his employment contract. Rather, the evidence demonstrates that defendant continually objected to the unilateral changes in his compensation package instituted by plaintiff and Jardine. Additionally, the evidence was sufficient to demonstrate that the other benefits that defendant's employment contract provided, such as office expenses and fringe benefits, were generally available to other employees who did not have a signed employment agreement.

■■■ The court further finds that defendant's employment contract expressly provides protection against the waiver of a party's breach. Plaintiff's argument of waiver focuses on defendant's continued employment for more than four years after Jardine breached the compensation addendum in January 1992. However, the amount, method, and manner of defendant's compensation was changed each year thereafter. Each change in defendant's compensation constituted an additional breach of his employment contract. The latest breach in defendant's employment contract occurred in September 1995. Plaintiff informed defendant that it was unilaterally changing his compensation package. Defendant resigned less than two months after the latest breach of his employment contract.

Section 8 of the contract provides that the "waiver of either party of a breach of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach hereunder." Even if the court accepts plaintiff's argument that defendant waived the 1992 breach by continuing to accept the benefits of the employment contract, the contract forbids this waiver from waiving subsequent breaches. The evidence demonstrated that defendant resigned less than two months after the plaintiff's latest breach of the employment contract. Defendant's resignation is entirely consistent with Missouri law that prohibits plaintiff from enforcing a noncompetition provision when it was the first party to breach the employment contract.

Additionally, the cases that plaintiff cites in support of its argument are distinguishable on their facts. In *Bronska*, 542 S.W.2d at 79, the court found that defendant waived plaintiff's breach of his employment contract because he settled his dispute concerning compensation. Although plaintiff changed the rate of defendant's compensation, the court noted that defendant agreed to the change in compensation after a meeting with plaintiff's vice-president. *Id.* In *Long*, 557 S.W.2d at 915, defendant was aware of the alleged breach of the employment contract

from the beginning of the contract term, and he made no objection to the breach.

The court finds the evidence in the instant action distinguishable. Defendant objected to each change that Jardine and plaintiff made in his compensation package. He never acquiesced to a change in compensation in exchange for other considerations. Additionally, none of the employment contracts in the cases that plaintiff cites included an express clause in the contract forbidding modification without the mutual consent in writing of both parties.

Finally, the court disagrees with plaintiff's analysis that defendant accepted the benefits of the contract without being bound by its obligations. Plaintiff attempts to do exactly the same thing. Plaintiff did not want to be bound by the contract's obligation to compensate the plaintiff in accord with the provisions of the written agreement, but plaintiff seeks to avail itself of the benefits contained in the noncompetition provisions of the contract. This is precisely the type of behavior that Missouri courts have disallowed in determining the validity of a covenant not to compete.

The court concludes that plaintiff has not demonstrated a likelihood of success on the merits on its claim that defendant breached his covenant not to compete. Sufficient evidence exists in the record for the court to find that no valid employment contract exists between plaintiff and defendant. On this basis, it is unnecessary for the court to address the remaining three elements of plaintiff's prima facie case. The court concludes that an order for preliminary injunction in this action would be inappropriate.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for preliminary injunction (Doc. 2) is denied.

IT IS FURTHER ORDERED that the temporary restraining order issued by the court on January 12, 1996, is dissolved.

**IT IS SO ORDERED.**