No. 49,267

In the Matter of the Estate of Thad M. Sandstrom, Deceased;
FRED MITCHELSON, Special Administrator and Executor, *Appellee,* v. MILDA R. SANDSTROM, *Appellant.*

(580 P.2d 1310)

Opinion filed June 30, 1978.

*Russell Shultz,* of Wichita, argued the cause and *Robert D. Hecht,* of Scott, Quinlan & Hecht, of Topeka, was on the brief for the appellant.

*Robert A. McClure,* of Colmery, McClure, Funk, Letourneau & Entz, of Topeka, argued the cause and *James P. Rankin* and *Michael W. Merriam,* of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an appeal by defendant-appellant, Milda R. Sandstrom, from an order granting an injunction restraining and enjoining her from the sale, disposal, mortgage, encumbrance, or other disposition, without prior court approval, of any property held in joint tenancy, or any property of the deceased, or any property jointly accumulated. The action was brought by plaintiff-appellee, Fred Mitchelson, special administrator of the estate of Thad M. Sandstrom. Under the terms of the will appellant was to receive all property and was named executor with Mitchelson named alternate executor. At the time of the order, appellant had been charged with feloniously killing Thad Sandstrom, her husband.

On appeal, appellant attacks the constitutionality of K.S.A. 59-513 which provides:

"No person who shall be convicted of feloniously killing, or procuring the killing of, another person shall inherit or take by will by intestate succession, as a surviving joint tenant, as a beneficiary under a trust or otherwise from such other person any portion of the estate or property in which the decedent had an interest: *Provided,* That when any person shall kill or cause the killing of his or her spouse, and shall then take his or her own life, the estates and property of both persons shall be disposed of as if their deaths were simultaneous pursuant to the provisions of K.S.A. 58-701 to 58-705, inclusive."

The appellee contends that the matter is not properly before this court for procedural reasons. The procedural issues will be dealt with first. It is appropriate to establish the time frame of events. All dates are in 1977 and are summarized as follows:

May 3—Thad M. Sandstrom died testate.

May 4—Mitchelson filed for probate of will and appointment of executor.

—Mitchelson filed for appointment of a special administrator.

—Mitchelson was appointed special administrator for the special purpose of conserving the estate until an administrator or executor was appointed and qualified.

—Probate court froze assets until appointment of an administrator or executor.

May 10—Application for restraining order and injunction.

—Temporary restraining order against defendant and all other persons from disposing of property.

May 17—Hearing on application of Mitchelson for injunction.

—Order granting injunction (order from which this appeal was taken).

June 2—Will admitted to probate and Mitchelson appointed executor.

June 16—Appeal filed.

August 1—Inventory and appraisal filed in probate court.

The transcript of the hearing on May 17, 1977, has been carefully reviewed. At the beginning of the hearing the trial court inquired as to the position of Milda Sandstrom with regard to the application for an injunction. Mr. Hecht represented the appellant at the hearing. Mr. McClure and Mr. Entz represented the special administrator. The following responses appear to the judge's inquiry:

MR. HECHT: ". . . if I understand the application correctly, I don't believe the widow would have any legal objection to at least some of the relief which was sought by the Administrator.

"I think as a matter of public record, both formally and informally, that the decedent's widow has been accused of feloniously killing the decedent, and of course we are all aware of the existence of KSA 59-13, [sic] which places some restrictions upon the passage of property to a person who may be convicted of a felonious killing of the prior holder of that property.

"That statute is not applicable at the present time and may never be applicable, but because the charges have been made, I can understand the Administrator's fiduciary position, and I can understand also that the Court has an obligation to the estate.

"We have no objection to the Court entering an order, and as a matter of fact, it

is my understanding that there is already an order which has been issued by the Probate Division, freezing all of the assets of the estate.

"Is that correct, sir?

MR. ENTZ: "That's partially correct, your Honor, and that is partially the reason we are here today, because it is not that extensive, as I understand it. That it only goes to certain jointly held property.

MR. HECHT: "Well, of course, that's all it can go to. Property which is owned individually by the decedent or held in joint tenancy to the right of survivorship between the decedent and his widow. It couldn't go as to property owned individually by the widow, nor could it go to property held, if any there is, to tenancy in common.

"I believe that the Court would be within its authority and discretion if it entered an order prohibiting any person, be that the Special Administrator or the decedent's widow or any other person, from encumbering or selling or mortgaging, or otherwise disposing of any of the real or personal property which was owned individually by the decedent or which was held in joint tenancy by the decedent and the decedent's widow, until further order of the Court.

"However, the restraining order which was issued ex parte on the 17th [sic] of May, construed as preventing the decedent's widow from occupying the homestead of the parties or having the use and control of the joint tenancy property of the parties until further order of the Court, we believe that this Court would have no authority to enter any order which would in any way impair or impede the right or the opportunity of the decedent's widow from occupying the homestead or having the exclusive use and control of any of the property which they held in joint tenancy until the further order of this Court, subject of course to the prohibition against the selling or encumbering or wasting or otherwise impairing title or disposing of it.

THE COURT: "Does the Special Administrator seek any order broader than that described by Mr. Hecht?

MR. ENTZ: "I think, your Honor, in part. We are in total agreement as to any restraining order that would enjoin her from disposing or otherwise encumbering.

"There is one matter that we would like to seek additional relief or determination by the Court, and that is the nature or the extent of the interest in the estate and the various assets, and, of course, we are seeking that additional—and in the interim we would like to have an injunction prohibiting disposition of any asset in which the State [sic] might have any interest whatsoever, so I think—

THE COURT: "I didn't understand that to be inconsistent with what Mr. Hecht has said.

MR. ENTZ: "I don't believe it is, your Honor. At some point we would either want to develop a mechanism or come before the Court again as to the interest in the estate in the assets, and possibly that is beyond the scope of this proceeding today—

THE COURT: "Wouldn't that be premature until there was some need to sell, dispose or encumber a particular item?

MR. HECHT: "Your Honor, please, and as I understand it, and frankly I don't know how this proceeding got before this Court, but be that as it may there isn't anything before your Honor which we can litigate the question of what, if any, property belongs to the estate outright, or in joint tenancy. An inventory hasn't

been prepared or filed. Once that is filed, then any party can litigate the question of whether the property listed in the inventory is the property listed in the estate or not, and until that question is reached, we are premature. I think at this point in time the only thing the application for the restraining order action asks for—and this the Court can properly do—is simply to impair the disposition of any of the property which was obviously the joint tenancy property and/or the property of the estate singularly. If there is property which the widow or other persons claim to be their individual property outside the joint tenancy relationship, or the property of the decedent, well that's a matter to be litigated at the time of the filing of an inventory.

MR. ENTZ: "That is precisely the question we have. It's one thing to enjoin the disposition of assets which the State [sic] has obviously interest in, but we—there may be some question as to her right to dispose of i.e. her allegation that it's simply her property and she is not bound by the injunction. That has to be litigated. Either by 59-513 or the problem of issuing an injunction enjoining disposition of estate property requires the determination of the interest of the estate and property which she may claim is not restricted by the restraining order and the estate may in turn claim that they do have an interest in it—

THE COURT: "Well, if we enjoin the sale, disposition or other encumbrance of any asset which the estate has an interest, either solely or jointly or with anyone else for that matter, then haven't we done all that we can? And should she sell an asset, erroneously thinking that it was hers alone, then that risk is hers and whether the order is violated or not, and if there is any question about it, won't we have to litigate that at the time?

MR. ENTZ: "I agree with that. The question is a mechanism as to whether— the question of that interest may be affected in part by 59-513, or 25-201 [sic], which would seem to indicate that even as to her own property, the estate of the husband, the deceased husband, may have an interest, and so the question which I am posing to the Court is I don't think there is any disagreement as to where we are headed, and as to what should be enjoined. The problem is the mechanism by which the issue is raised and then we are litigating the interest of the estate.

"If the surviving widow would like to post a bond to—

MR. HECHT: "We would like to—

MR. ENTZ: "—ensure that the assets that she disposes of is something that it's entirely her right to dispose of, and if she is wrong, we are reimbursed, that is one alternative.

MR. HECHT: "There is a very simple mechanism for doing that, and that's for the estate to file an inventory and once that is filed, a mechanism exists to litigate whether or not all of the assets listed in the inventory are the assets of the estate."

No evidence was presented by either party on the application. It is abundantly clear that the order was entered by mutual consent as a temporary measure to maintain the status quo until the rights of the parties to any particular property could be determined. The transcript, further, clearly shows both parties could apply to the court, during the duration of the injunction, for such additional orders as might be necessary. The trial court's ruling was as follows:

"I am looking at [59-] 513, and it says: 'No person who shall be convicted of feloniously killing, or procuring the killing of, another person shall inherit or take by will by intestate succession, as a surviving joint tenant, as a beneficiary under a trust or otherwise from such other person any portion of the estate or property in which the decedent had an interest.'

"The Ackers case is not in point to the issue here because in that particular case the property in question was acquired by inheritance, which fits strictly under the statute [23-] 201.

"The Court did comment, however, that '. . . the rule as announced does not apply to property jointly accumulated during the marriage. However, it is conceded in this case that the property in dispute was acquired by inheritance, rendering a consideration of the question as to what constitutes jointly acquired property unnecessary.' That's quoting from page 326 of 192 Kansas.

"As near as I can tell then, we haven't reached this question yet, but the Court has plainly announced that there is an apparent difference between property jointly accumulated, insofar as the same may be liable for the debts of the decedent.

"Consequently, it will be the order of the Court that an injunction will issue based upon the verified application of the Special Administrator and the stipulation of the widow, relative to the basic and underlying facts covering the sale, disposal, mortgage, encumberment, or otherwise, any disposition whatsoever, without prior court approval, of any assets held; (a) By the decedent in his own right at the time of his death and now by the estate; (b) Any income or any acquisitions that might have occurred since the death of the decedent; (c) Any property held in joint tenancy the rights of survivorship by the decedent and any other person; and, (d) Any property of the decedent and/or the widow of the decedent which was jointly accumulated during the marriage.

"Expressly excluded from the injunction will be any property separately owned by the widow, or for that matter, any other person, which was acquired by inheritance, gift, or otherwise from any source other than the income efforts or private property of the decedent during the marriage of the parties.

"If and in the event this order shall apply to all parties including the Special Administrator, no sale, disposition, encumbrance or otherwise of these properties shall be permitted without prior Court approval.

"Now, should there be a need on the part of any parties of the estate to sell or mortgage or otherwise dispose any property falling out of the categories outlined by the Court, a determination may be made by the Court for the determination of the ownership thereof, and we will have a hearing on that matter in the event there is any disagreement.

"That will be the order of the Court and I will ask the Special Administrator to prepare a journal order."

After the court made its ruling, the balance of the proceeding was as follows:

"MR. HECHT: Excuse me, your Honor, that requires notice to parties without prior approval of the Court. You said without prior approval—

"THE COURT: Yes, it requires notice to the parties and an opportunity to be heard in the event there is any disagreement.

"I have a feeling of that 98 percent of all the property of these parties the lawyers present can sort out without a Court hearing, whether there is any arguable interest or not, and if you can't, why come back and we will take evidence on the question and determine what is the right thing to do.

"MR. McCLURE: May it please the Court, we have a bill at the present time incurred by the decedent and his wife, most of which are under the $200 limit, requiring probate court approval for payment. Electric light bills, things such as that. Does this order embrace those—the payment of those bills, for example, from salary received by the decedent after his death, from his employer.

"THE COURT: I think that is not any—unless the widow claims any personal and direct interest in that salary. Does she?

"MR. HECHT: Of course.

"MR. McCLURE: Well, we have got to pay bills of the estate in some manner. The funeral bill, for example; the maintenance of the house; utilities; the dental bills and things like this. We have those bills ready to pay now. Now, I am asking if the order of the Court embraces these, we can make an application of the Court to pay those out of these funds.

"MR. HECHT: I think the Court's order embraces everything. The widow has even more basic needs than that. She needs things such as toothpaste and brushes and she is going to have to apply to the Court for an order to withdraw funds from her own checking account in order to buy toothpaste.

"THE COURT: I think we better apply it to everything and file your application and your appropriate department will approve the payment of the bills from the property available.

"We are adjourned."

There is no claim any application was made for release of property by appellant.

Although the general rule is that a party is bound by a judgment entered on stipulation or consent and may not appeal from a judgment in which he or she has acquiesced, there is a well-recognized exception in those cases when the party attacks the judgment because of lack of consent or because the judgment deviates from the stipulation or when the party's attorney had no authority to settle the case and did so without the agreement and consent of his client. (*Reimer v. Davis*, 224 Kan. 225, Syl. 2, 580 P.2d 81 [1978].) No such exception is shown herein.

Looking through form to substance we have before us an order entered with no objection that was a temporary measure to maintain the status quo until a determination could be had on the merits. Further, the issues raised by the appellant on appeal were not before the trial court for determination.

The order on appeal was not an appealable order. The appeal

must be dismissed. In view of this conclusion, the other issues raised need not be considered.

The appeal is dismissed.