(616 P.2d 287)
No. 50,442

In the Matter of the Guardianship and Conservatorship of
FREDERICK J. MILLER

Opinion filed August 1, 1980.

*Charles R. Hay,* of Goodell, Stratton, Edmonds, Palmer & Wright, of Topeka, for appellant Rex S. Miller.

*Eric W. Severson,* of Topeka, pro se as appellee.

*Patrick Nichols,* of Topeka, guardian ad litem for appellee Frederick J. Miller.

Before FOTH, C.J., ABBOTT and SPENCER, JJ.

ABBOTT, J.: Rex S. Miller, the Nebraska guardian and conservator for Frederick J. Miller, appeals from a judgment awarding attorney fees to Eric W. Severson who petitioned for the appointment of a Kansas guardian and conservator for Frederick J. Miller. At the time the petition was filed, Severson was aware that Frederick Miller had a guardian and conservator in Nebraska. Laboring under a number of theories, the Nebraska guardian and conservator challenges jurisdiction, alleges that the principles of comity preclude exercise of jurisdiction, and challenges the award of attorney fees.

By way of background, Frederick Miller was a dentist in the United States Air Force and is a retired Air Force officer. On June 27, 1961, he was committed as a voluntary patient to the Omaha Veterans Administration Hospital. Rex Miller, the son of Frederick Miller and his first wife, had been appointed in Nebraska as guardian and conservator for Frederick Miller, and continues to serve in that capacity. At some time after his voluntary commitment to the Omaha VA facilities, Dr. Miller was transferred to the Veterans Administration Hospital in Knoxville, Iowa, and remained there until December 20, 1966, when he was transferred to the Topeka VA Hospital. The second wife of Frederick Miller

and their two adult daughters live in Topeka, and they were instrumental in having him transferred to Topeka.

Miller was 76 years old when the petition was filed in Shawnee County, and he had been a patient in the Topeka VA Hospital for twelve years. He hired Eric Severson to assist him in being placed in a nursing home and to obtain an additional allowance for him for clothing and spending money. Severson, as petitioner, filed an action pursuant to K.S.A. 59-3001 *et seq.,* in Shawnee County, Kansas, praying for the appointment of a guardian and conservator; and the court appointed Patrick Nichols as guardian ad litem for Miller. Thereafter, Severson did not contact Miller in any way but assumed an adversary position to Miller, although he attempted to pursue what he perceived to be Miller's wishes. The Nebraska guardian and conservator entered his appearance in Kansas and the matter proceeded to trial.

At trial, the VA Hospital administrators and Miller were all of the opinion that Rex Miller was not as responsive to his father's needs as they felt he should be. Evidence was presented that the elder Miller had investment income, a military retirement pension, social security, and a more than moderate savings account. The VA people felt that Miller could function well in a nursing home and should be so placed. Rex Miller was not agreeable. The VA people were also of the opinion that Miller was not receiving an adequate allowance for clothing or sufficient spending money to permit him to participate in programs that they felt would be beneficial to him. Rex Miller had not visited his father since his transfer to Topeka in 1966. Miller himself was not as positive of the need to change guardians when he testified; he did make it clear he wanted out of the VA Hospital and that he did not always have as much money as he would like. He also made it very clear that he wanted either his wife or Rex to be his guardian and conservator, and that he was not dissatisfied with Rex as his guardian and conservator. There is no evidence in the record from any member of Frederick Miller's family that they were unhappy with his care or that they desired a change of guardian.

During Severson's presentation of evidence in support of the petition, the parties requested a recess. They later announced that they had reached a settlement and stipulated that Karen Schuh be appointed guardian of the person of Frederick J. Miller in the

State of Kansas, and that Miller be considered for placement outside the VA Hospital. The Nebraska guardianship and conservatorship was to remain open. The Kansas guardian qualified, was appointed, and assumed her duties. The trial court subsequently awarded attorney fees to Severson and to the guardian ad litem and assessed them against the ward's estate. This appeal followed. Although the court's jurisdiction is challenged, the appointment of a Kansas guardian is not otherwise challenged nor is the fee awarded to the guardian ad litem an issue in this appeal. The only complaint is the award of attorney fees to Eric Severson.

The Nebraska guardian and conservator first challenges the jurisdiction of the Kansas court to entertain a guardianship proceeding, since the court relied solely on Miller's presence in Shawnee County for jurisdiction (K.S.A. 59-3009). It is important to note that we are not dealing with jurisdiction as to a conservatorship. A conservatorship proceeding is required to be filed in the "county of the residence of the proposed conservatee." The conservatorship aspect of the proceeding was abandoned as a part of the settlement. Thus, we are concerned here only with the court's jurisdiction of a guardianship proceeding.

The Nebraska guardian and conservator recognizes that he agreed to the appointment of the Kansas guardian, but correctly asserts that his consent may not waive subject matter jurisdiction. Subject matter jurisdiction is vested by statute and cannot ordinarily be established by consent, waiver or estoppel. *In re Estate of Freshour,* 177 Kan. 492, 280 P.2d 642 (1955); *City of Hutchinson v. Wagoner,* 163 Kan. 735, 186 P.2d 243 (1947). When a court is without jurisdiction of the subject matter, its only permissible course of action is to dismiss the case. *Inland Industries, Inc. v. Teamsters & Chauffeurs Local Union,* 209 Kan. 349, 356, 496 P.2d 1327 (1972).

Appellant relies on several cases decided prior to the adoption of K.S.A. 59-3009 which hold that Kansas had no subject matter jurisdiction to appoint a guardian unless the proposed ward is a permanent resident of this state. In *Foran v. Healy,* 73 Kan. 633, 85 Pac. 751 (1906), a guardian was appointed for a ward in Lincoln County, Kansas, at which time the ward had been committed to the state asylum for the insane by the probate court of

Shawnee County, Kansas. Some four months after the guardian was appointed in Lincoln County, a guardian was appointed in Shawnee County. The ward owned real estate and personal property in Lincoln County; his wife and children lived in Lincoln County on a farm owned by the ward and his wife. The farm was subject to a mortgage; foreclosure proceedings were commenced and service was obtained only on the Lincoln County guardian; the land was sold. Some seven years later the ward was restored and unsuccessfully attempted to redeem the real estate. The Supreme Court held that the legislative intent of the commitment statute was in the nature of a police regulation, the purpose of which was to give a county jurisdiction over an insane person who might be found therein in order to protect the public and the insane person. Jurisdiction over the ward in Shawnee County was held to be limited to determining the question of his sanity only. The actual jurisdiction of the person and estate of the ward was held to be in Lincoln County.

In *Trust Co. v. Allen,* 110 Kan. 484, 204 Pac. 747 (1922), two guardians, one in Nebraska and one in Kansas, were appointed for the same ward on the same day. The ward had been a Nebraska domiciliary for over fifty years, but was visiting in Kansas with her stepson at the time of the appointments. The Nebraska guardian filed a writ of habeas corpus in Kansas to enforce his alleged right of custody. The trial court decided in favor of the Kansas guardian, largely because it seemed to be in the best interest and convenience of the ward. The Supreme Court reversed the ruling and granted the writ in favor of the Nebraska guardian solely because the ward's permanent residence was and had been for many years in Nebraska. The Court stated at page 491:

"In this state it has been held that the jurisdiction for the appointment of a guardian of a minor is in the county of the minor's domicile in the absence of any express statute upon that question. (*Connell v. Moore,* 70 Kan. 88, 78 Pac. 164.) And in *Foran v. Healy,* 73 Kan. 633, 85 Pac. 751, it was held that the jurisdiction to appoint a guardian over the person and estate of a lunatic belongs exclusively to the probate court of the county where such lunatic has a permanent residence. By analogy there is every reason to hold that the jurisdiction to appoint a permanent guardian over the person and estate of a lunatic belongs exclusively to the courts of the state where such lunatic has a permanent residence.

This rule of law was most recently reaffirmed in *Henry v. Edde,*

148 Kan. 70, 74, 79 P.2d 888 (1938). The statute in effect at the time of *Foran* read in pertinent part:

"If information in writing is given to the probate court that any one in its county is incapable of managing his affairs . . . the court, if satisfied that there is good cause for the exercise of its jurisdiction, shall cause the facts to be inquired into by a jury." G.S. 1901, § 3941.

The successor statutes, L. 1917, ch. 165 and G.S. 1935, 20-1101, gave substantially the same jurisdiction to the probate court. Petitioner does not offer any viable distinction in the facts here, but argues that the 1965 enactment of K.S.A. 59-3009 changes the result of these old cases. K.S.A. 59-3009 states in pertinent part:

"Any person may file in the district court of the county of the *residence or presence* of the proposed ward a verified application for the appointment of a *guardian.* Any person may file in the district court of the county of the *residence* of the proposed conservatee a verified application for the appointment of a *conservator.* If the proposed conservatee resides without the state, such application may be filed in any county in which any of the property of the proposed conservatee is situated." (Emphasis supplied.)

At the time Kansas interpreted the since-repealed G.S. 1901, § 3941 as not granting subject matter jurisdiction to appoint a permanent guardian over a person domiciled in a foreign jurisdiction, the Restatement of Conflict of Laws did not recommend jurisdiction over any child or incompetent unless the proposed ward was domiciled in the state (at §§ 117, 149). The Restatement did provide for a temporary guardianship of a ward domiciled in a foreign jurisdiction (at §§ 118, 150). Kansas followed the Restatement in its early cases concerning guardianships, with only minor exceptions not applicable to this case. In 1965, Kansas separated the treatment of mentally ill persons (Article 29, K.S.A. 59-2901 *et seq.*) from guardianship and conservatorship proceedings and adopted K.S.A. 59-3009. When Kansas was studying possible changes in guardianship, the American Law Institute was considering changes that ultimately led to the adoption of Restatement (Second) of Conflict of Laws. The first tentative draft was available in 1953 and the final tentative draft was available in 1965. The tentative drafts were followed by the three installments of the proposed official draft (1967-69), and official adoption occurred in 1969. Restatement (Second) recommends that a state have jurisdiction over a child or adult "(a) who is domiciled in the state, or (b) who is present in the state, or (c) who is neither domiciled nor present in the state, if the controversy is between

two or more persons who are personally subject to the jurisdiction of the state." Restatement (Second) of Conflict of Laws § 79 (1971).

K.S.A. 59-3009 gives specific authority to any person to file in the district court of the county where the proposed ward resides or is present a petition for appointment of a guardian. It appears that the intent of the legislature in 59-3009 was to expand the court's jurisdictional bases to conform to the recommendation ultimately adopted in Restatement (Second) of Conflict of Laws § 79 (1971). Appellant asserts that 59-3009 merely sets the venue for guardianship proceedings, and does not attempt to confer jurisdiction. Venue for guardianship proceedings is specifically set out in K.S.A. 59-2203, suggesting that 59-3009 pertains to more than just venue. Such interpretation is logical when attempting to harmonize the existence of the two statutes without finding them duplicitous.

The Supreme Court of the United States has never had occasion to place constitutional limitations upon an attempted exercise of state power in appointing a guardian. Therefore, the question of what factual connection must exist between a state and a ward before the state has power to appoint a guardian is first to be answered by looking in each state to the statutory law which gives power to the courts. Paulsen and Best, *Guardians and the Conflict of Laws,* 45 Iowa L. Rev. 212, 213 (1960). Restatement (Second) of Conflict of Laws § 79 (1971) states:

"The state where the [ward] is physically present has the most immediate concern with him; its courts also have direct access to the [ward] and may be most qualified to decide what will best redound to his welfare. . . ." (at 237.)

". . . The state in which the [ward] is physically present must have power to take the necessary steps for his protection . . . ." (at 238.)

Courts and commentators alike have been critical of a strict resort to domiciliary jurisdiction without some additional provision for jurisdiction in the court of the state where the ward is present. See *In re Adoption of Pratt,* 219 Minn. 414, 18 N.W.2d 147 (1945); 45 Iowa L. Rev. at 213-22.

We are convinced the legislature intended to grant subject matter jurisdiction, based on presence in the state, and that Kansas has jurisdiction to appoint a guardian pursuant to K.S.A. 59-3009 for any incapacitated person who is within this state, even though a foreign jurisdiction has previously exercised juris-

diction by appointing a guardian or conservator or both, and continues to exercise such jurisdiction.

The crucial question in this case, and in every case in which a foreign court is exercising jurisdiction at the time a Kansas court is requested to appoint a guardian, is whether the trial court should exercise jurisdiction as a matter of comity. We deem the large number of cases cited by appellant to be inapplicable in that they deal primarily with the question of whether one district court in Kansas may entertain jurisdiction over an action *pending* in another Kansas district court. That issue is well settled in Kansas. The issue here is what effect the Kansas courts must give to the Nebraska court's prior guardianship decree.

We would be justified in simply holding that the comity argument is waived as a result of the consensual judgment appointing one of appellant's own clients as the Kansas guardian. Generally, a party is bound by a judgment entered on stipulation or consent and may not appeal from a judgment in which he or she has acquiesced. *In re Sandstrom,* 224 Kan. 293, 298, 580 P.2d 1310 (1978). Legal commentators have found that only questions of *subject matter* jurisdiction are reviewable on appeal from a judgment by consent. Annot., 69 A.L.R.2d 755, 803-04 (1960).

Subject matter jurisdiction and comity are not equivalent concepts. Subject matter jurisdiction deals with the power of the court to hear a certain type of case while comity relates to determining whether or not it should or will exercise such power. Subject matter jurisdiction is the power to decide concerning the general question involved and not the exercise of that power. *Behee v. Beem,* 156 Kan. 115, 117-18, 131 P.2d 675 (1942). Jurisdiction over the subject matter refers to the power of a court to hear and determine cases of the general class to which the particular one belongs (20 Am. Jur. 2d, Courts § 105), and is obligatory with the court, while comity has been defined as:

"[A] principle in accordance with which the courts of one state or jurisdiction give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect." 16 Am. Jur. 2d, Conflict of Laws § 10.

Custody and guardianship decrees are similar in nature, and rules applying to one also apply to the other. 45 Iowa L. Rev. at 223; Restatement (Second) of Conflict of Laws § 79, Comment *d.* Insofar as full faith and credit is concerned, the state of the forum has at least as much leeway to disregard the custody or guardian-

ship decree of a sister state, or to qualify it, or to depart from it, as does the state where it is rendered. *Kovacs v. Brewer,* 356 U.S. 604, 2 L.Ed.2d 1008, 78 S.Ct. 963 (1958); *Miracle v. Miracle,* 208 Kan. 168, 177, 490 P.2d 638 (1971). The Nebraska legislature, with some modification, has adopted Section 5-313 of the Uniform Probate Code as Neb. Rev. Stat. § 30-2629, and it reads:

"(a) The court where the ward resides has concurrent jurisdiction with the court which appointed the guardian, or in which acceptance of a testamentary appointment was filed, over resignation, removal, accounting and other proceedings relating to the guardianship.

"(b) If the court located where the ward resides is not the court in which acceptance of appointment is filed, the court in which proceedings subsequent to appointment are commenced shall in all appropriate cases notify the other court, in this or another state, and after consultation with that court determine whether to retain jurisdiction or transfer the proceedings to the other court, whichever may be in the best interest of the ward. A copy of any order accepting a resignation or removing a guardian shall be sent to the court in which acceptance of appointment is filed."

Since the guardianship order of the Nebraska court was subject to modification in Nebraska, and Nebraska contemplated modification under certain circumstances in other states, the Kansas court could also exercise jurisdiction and modify the order. See *Miracle v. Miracle,* 208 Kan. at 177; *Perrenoud v. Perrenoud,* 206 Kan. 559, 577, 480 P.2d 749 (1971). The fact that a broad power exists to appoint a guardian does not mean that one should be appointed on every request. As a matter of comity, it appears that absent a valid reason to do so a second guardian should not be appointed, even though Kansas has that jurisdiction. We express disapproval of the lack of contact with the Nebraska court by counsel and the trial court, and believe that the better course of conduct would have been for the trial judge to refuse to exercise jurisdiction until the Nebraska court had an opportunity to correct the alleged problems. The test, however, is not what we perceive to be the better method, but whether the trial court abused its discretion. We cannot say that it did. The proposed ward had lived in Kansas for some twelve years. During that time, the Nebraska guardian and conservator had not visited his ward, and the trial court had before it allegations that the guardian and conservator was not responsive to the ward's needs, although ample income and financial resources were available to meet the perceived needs that were recommended by the VA staff, and that attempts in the

past to work with the Nebraska guardian and conservator had been unsuccessful.

The next issue presented involves the award of attorney fees to Eric Severson, which award, we construe from oral argument, was made against the ward's estate. Appellant questions the trial court's authority to award attorney fees to Severson to be paid out of the ward's estate when Severson was technically cast in an adversarial role to the ward, his client. Respondent also stresses authority, such as that found in *Lines v. City of Topeka,* 223 Kan. 772, 782, 577 P.2d 42 (1978), and *McGuire v. McGuire,* 190 Kan. 524, Syl. ¶ 3, 376 P.2d 908 (1962), which states the general rule that attorney's fees generally are not allowable as costs in an action in the absence of a statute authorizing their allowance.

The trial judge here relied on K.S.A. 59-3032 to award fees to both the guardian ad litem and the petitioner. K.S.A. 59-3032 states in pertinent part:

"In each proceeding the court shall allow and order paid to any individual or institution as a part of the costs thereof a reasonable fee and expenses for any professional services ordered performed by the court pursuant to this act other than those performed by any individual or institution under the jurisdiction of the department of social and rehabilitation services, but including the fee of counsel for the proposed ward or proposed conservatee or ward or conservatee when counsel is appointed by the court. Other costs and fees shall be allowed and paid as are allowed by law for similar services in other cases. The costs shall be taxed to the estate of the proposed ward or proposed conservatee or ward or conservatee, to those bound by law to support him or her or to the county of the residence of the proposed ward or proposed conservatee or ward or conservatee as the court having venue shall direct."

No objection is made to the award of fees to the guardian ad litem. Courts generally have been willing to assess fees against the ward's estate. 1 Speiser, Attorney's Fees § 12:88-93 (1973). Annot., 22 A.L.R.2d 1438, 1439, summarizes the case law in the area:

"It is generally agreed that insanity proceedings are for the benefit of the alleged incompetent, and necessary to the protection of his person and property. Since legal services are required in the proper prosecution and defense of the proceedings, the fees of counsel involved on both sides have been held recoverable from the incompetent's estate on the principle that an incompetent is liable for necessaries furnished him.

"An unsuccessful proceeding has been regarded as in the interest of the alleged incompetent when brought in good faith. And an unsuccessful defense has generally been held in the incompetent's interest; and even if a verdict in his favor

would not have been to his advantage, he has been held liable for the fees if the defense was conducted in good faith, or with a reasonable belief in his sanity.

"The recovery of fees of the petitioner's attorney as part of the costs of the inquisition is ultimately dependent on the statutory or inherent powers of the court. In the absence of express statutory provisions, the fees are usually allowed under the theory of liability for necessaries, subject to limitations on the court's power to award them.

"In some jurisdictions, equitable or statutory rules governing the award of costs or expenses have been used as the basis of the granting or withholding of fees to the petitioner in sanity proceedings. Some of these rules are expressly applicable to sanity or guardianship proceedings, and the cases are therefore governed by their detailed terms.

"Although one found on the inquisition to be sane has been held liable for the petitioner's counsel fees, general and special statutory provisions regarding the award of costs and expenses have been invoked to preclude such liability in most cases. Unsuccessful petitions may also involve the troublesome problem, seldom raised in American courts, of the absence of any fund in court from which an award of costs or expenses can be made."

The trial court places great reliance on *In re Estate of Holder,* 168 Kan. 657, 215 P.2d 166 (1950), to support the award of petitioner's fees. In that case, the Kansas court held that attorney fees generated in an action brought to restore the ward's legal capacity could be recovered from the estate of the ward:

"The argument of the appellant is that, should it be held these attorneys may be paid from the assets of the estate of the ward, then it will be an invitation for proceedings without merit to be brought by intermeddlers to restore incompetent persons. The argument is that before counsel instituted these proceedings they should have requested the guardian to give them permission to do so and on the refusal of the guardian they should have asked permission of the probate court. This argument is answered in part by the provisions of G.S. 1947 Supp., 59-2268. That section provides as follows:

" 'Any person who has been adjudged insane or incompetent as herein provided, or his guardian, or any other person interested in him or his estate may petition the court in which he was so adjudicated or to which the venue has been transferred to be restored to capacity: *Provided,* A petition for the restoration to capacity of a patient committed to a state hospital shall not be filed within six months after the patient's admission thereto nor oftener than once every six months. Upon the filing of such petition, the court shall fix the time and place for the hearing thereof, notice of which shall be given to the superintendent thereof if the patient is under the control of or has been discharged from a state hospital, and to such other persons and in such manner as the court may direct. Any person may oppose such restoration. Upon hearing of the petition and proof that such person has been restored to capacity and is capable of managing his person and estate, the court shall adjudge him restored to capacity. If the venue has been transferred no proceedings need be had in the court from which the venue was transferred.'

"It is noted that a petition to restore any person who has been adjudged

incompetent may be brought by the incompetent person, by his guardian or by any other person interested in him or his estate. The statute thus confers authority on the incompetent person to petition the court to be restored. It also bestows that power on any person interested in him. We cannot say from this record that the two attorneys who made the claim for fees in this case were not interested in Anna C. Holder. There is no doubt about the meaning of the above provisions. If the legislature had intended the proceedings to restore an incompetent could only be brought by the guardian or with the consent of the guardian, then it would not have made the provision that the petition might be brought by any person interested in the incompetent. This provision carries with it by implication that a lawyer who files such a petition and presents it to the probate court may be paid from the estate of the incompetent. That is undoubtedly what the legislature intended when it enacted such broad authority to file such a petition. Should we hold in conformity with the argument of the guardian here, no lawyer could undertake such a proceeding except on a contingent basis unless he were paid by some person interested in the incompetent. We cannot read such an intention from the provisions of this statute." 168 Kan. at 660-61.

The court in *Holder* also put some limitations on its new rule:

"This is not to say that in every case brought to restore a ward to competency, counsel may be reimbursed out of the assets of the estate. Every case will depend upon its own surrounding facts and circumstances. Here the probate court of Sedgwick county heard the proceedings in the first place, the same court heard the application for allowance of attorney fees and other expenses incident to the restoration hearing and would have been the court to pass upon whether or not the action should have been brought in the first place had the proceeding contended for by the guardian have been followed. The value of the services as well as the good faith of the lawyers is conceded." 168 Kan. at 662.

As we view it, the critical factor in *Holder* was that the action was brought in good faith and resulted in some benefit to the ward. In *Holder,* any person could file a petition to restore. In this case, any person can file an action to appoint a guardian. K.S.A. 59-3009. Contrary to respondent's arguments, a guardianship proceeding may be viewed as beneficial to the well-being of the proposed ward (Annot., 22 A.L.R.2d at 1439); thus, the reasoning in *Holder* to the effect that such a rule encourages the initiation of guardianship proceedings is persuasive. Furthermore, the statutes in effect at the time of *Holder* were no more specific regarding the recovery of attorney fees than are the statutes here, and the Supreme Court had no qualms then about awarding attorney fees.

It appears that if we viewed the benefit of the services from today's perspective, it has little, if any, value. At the time the attorney fees were awarded, however, it appeared the ward had benefited considerably. The Nebraska-appointed guardian and

conservator agreed to increase the monthly allowance and to have the ward transferred to a nursing home. In reviewing alleged abuse of discretion on the part of the trial judge, we consider the facts as they appeared at the time the disputed decision was made, and at that time it appeared the ward's objective had been accomplished.

Appellant next contends that Nebraska has exclusive jurisdiction over the ward's assets by virtue of the Nebraska conservatorship. In support of this position, he cites *Schaefer v. Milner,* 156 Kan. 768, 137 P.2d 156 (1943); *Bridgeport Machine Co. v. Arthur A. Beard, Inc.,* 135 Kan. 711, 11 P.2d 990 (1932); and *Fleeger v. Swift,* 122 Kan. 6, 251 Pac. 187 (1926), for the proposition that once a court takes jurisdiction of property, that jurisdiction is exclusive and another court with concurrent jurisdiction may not interfere with the first court's authority. See generally *Nixon v. Nixon,* 226 Kan. 218, 596 P.2d 1238 (1979). We deem the principle of law set forth in the line of cases cited by appellant to be inapplicable. The cases relied on by appellant seek to avoid conflicting orders between two courts having conflicting jurisdictions and represent sound law. Here, the Nebraska court has exclusive jurisdiction over the ward's estate, subject only to meeting the financial needs of the ward.

Here, the Kansas court order appointing a Kansas guardian was consented to by the Nebraska guardian and conservator, an officer of the Nebraska court for the purpose of controlling Frederick Miller's estate. See 39 Am. Jur. 2d, Guardian and Ward § 1. In effect, the Nebraska court, through the actions of its officer, relinquished part of its exclusive jurisdiction to the Kansas court when Rex Miller acquiesced in the Kansas court's order. See *Penn Co. v. Pennsylvania,* 294 U.S. 189, 198, 79 L.Ed. 850, 55 S.Ct. 386 (1935). Appellant may not now assert lack of jurisdiction over the estate assets as a defense when he himself implicitly imparted to the Kansas court the authority to make an order indirectly affecting the Nebraska court's control over them. It should be noted that this is not a case in which a Kansas court is attempting to control assets already under the control of the Nebraska court; instead, the Kansas court is merely making an order awarding attorney fees as costs in an action it was authorized to hear. Courts of equity, having acquired jurisdiction of the parties and the subject matter of the suit, have the inherent power to make all

necessary orders, decrees and judgments so as to settle the matters in controversy and thus prevent further litigation. *National Reserve Life Ins. Co. v. Hand,* 190 Kan. 180, 185, 373 P.2d 194 (1962).

We have considered appellant's complaint that the amount of attorney fees awarded is excessive. We have examined the itemized statement submitted and are unable to say the trial judge abused her discretion in awarding attorney fees in the amount awarded.

Affirmed.