No. 50,442

In the Matter of the Guardianship and Conservatorship of
FREDERICK J. MILLER

(620 P.2d 800)

Opinion filed December 6, 1980.

*Charles R. Hay,* of Goodell, Stratton, Edmonds, Palmer & Wright, of Topeka, argued the cause and *Patrick M. Salsbury,* of the same firm, was with him on the brief for the appellant Rex S. Miller.

*Eric W. Severson,* of Topeka, argued the cause and was on the brief pro se as appellee.

*Patrick Nichols,* of Topeka, argued the cause and was on the brief as guardian ad litem for the appellee Frederick J. Miller.

The opinion of the court was delivered by

HERD, J.: This is an appeal by Rex S. Miller, the Nebraska guardian and conservator for Frederick J. Miller, from an award of attorney fees to Eric W. Severson for his work in petitioning for the appointment of a Kansas guardian and conservator.

Frederick J. Miller retired from the Air Force where he served as a dentist. On November 1, 1960, Rex S. Miller, son of Miller and his first wife, was appointed to serve as guardian and conservator for Frederick Miller in Nebraska. He continues to serve in that capacity. On June 27, 1961, Frederick Miller was voluntarily committed to the Omaha Veterans Administration Hospital. Later, Dr. Miller was transferred to the VA Hospital in Knoxville, Iowa, and on December 20, 1966, through the efforts of his second wife and their two adult daughters, Dr. Miller was transferred to the Topeka V.A. Hospital where he has remained to this time.

Dr. Miller became dissatisfied with the amount of money his guardian, Rex Miller, permitted him to have from his various pensions which had accumulated into a balance of $49,325.23 in 1976. The money was deposited in various banks and savings and loans. He discussed his problem with Eric W. Severson, a Topeka lawyer. As a result, Severson petitioned for the appointment of a guardian and conservator for Frederick J. Miller in Shawnee County on March 9, 1978, under K.S.A. 59-3009 *et seq.* The petition alleged that "Frederick J. Miller is in need of the appointment of a guardian and conservator because he currently suffers from certain medical disorders, to-wit: chronic schizophrenia and organic brain syndrome manifested by poor memory, and is therefore incapable of making all personal decisions and managing his financial affairs." Severson asked that Charles Andrews, of the law firm of Sprague, Miller and Andrews, be appointed guardian and conservator. Severson knew Frederick J. Miller had a Nebraska guardian and conservator and acknowledged it to the court in his trial brief.

On March 20, 1978, Dr. Miller's guardian and son, Rex Miller, of Lincoln, Nebraska, filed an entry of appearance and a motion to dismiss in the case, attacking the Kansas court's jurisdiction. The motion was overruled and after a lengthy hearing the parties stipulated that Karen Schuh, Frederick Miller's daughter, be appointed "guardian only for the person of Frederick J. Miller, in the State of Kansas." Karen Schuh qualified on June 5, 1978, and letters of guardianship were issued to her on that date.

Patrick Nichols, a Topeka attorney, was appointed by the court as guardian ad litem for Frederick J. Miller for the hearing on the petition. The court allowed Nichols an attorney fee in the amount

of $1500 stating "the above cost is hereby assessed against the conservatorship of the estate of Frederick J. Miller." No appeal was taken from that order.

On May 17, 1978, Eric Severson filed a motion for allowance of attorney fees and expenses in the amount of $2,674.67 for services as attorney for the petitioner. Rex Miller, the Nebraska guardian and conservator, filed defenses to Severson's motion, attacking the jurisdiction of the court and questioning the court's statutory authority to award attorney fees and the reasonableness of the award. On August 22, 1978, the court granted the motion for attorney fees in its entirety and this appeal followed.

Appellant raises five issues on appeal. Only three issues will be discussed in this opinion as they are dispositive of the case.

The threshold issue is whether the Kansas court has subject matter jurisdiction over this guardianship proceeding. Appellant argues the mere presence of a proposed ward in the county, absent a finding of permanent residency, confers no jurisdictional basis for a Kansas court to appoint a guardian, thus rendering the entire proceedings, including allowance of attorney fees, void. *Inland Industries, Inc. v. Teamsters & Chauffeurs Local Union,* 209 Kan. 349, 356, 496 P.2d 1327 (1972). Appellee argues the appointment of the Kansas guardian was stipulated and agreed to by both parties, thereby eliminating any question of jurisdiction. Appellant correctly alleges that consent does not waive subject matter jurisdictional defects. *In re Estate of Freshour,* 177 Kan. 492, 280 P.2d 642 (1955).

With the consent issue eliminated, we are left with appellant's argument which relies upon three older cases specifically holding Kansas has no jurisdiction to appoint a guardian unless the proposed ward is a permanent resident of this state. *Foran v. Healy,* 73 Kan. 633, 85 Pac. 751 (1906); *Trust Co. v. Allen,* 110 Kan. 484, 204 Pac. 747 (1922); and *Henry v. Edde,* 148 Kan. 70, 79 P.2d 888 (1938). Those cases interpreted G.S. 1901 § 3941, and its statutory successors, which stated in part:

"If information in writing is given to the probate court that any one in its county is . . . incapable of managing his affairs, and praying that an inquiry thereinto be had, the court, if satisfied that there is good cause for the exercise of its jurisdiction, shall cause the facts to be inquired into by a jury."

The present statute is K.S.A. 59-3009:

"Any person may file in the district court of the county of the residence or

presence of the proposed ward a verified application for the appointment of a guardian."

## The distinguished Judge of the Court of Appeals, Bob Abbott, states in *In re Miller,* 5 Kan. App. 2d 246, 251-53, 616 P.2d 287 (1980):

"At the time Kansas interpreted the since-repealed G.S. 1901, § 3941 as not granting subject matter jurisdiction to appoint a permanent guardian over a person domiciled in a foreign jurisdiction, the Restatement of Conflict of Laws did not recommend jurisdiction over any child or incompetent unless the proposed ward was domiciled in the state (at §§ 117, 149). The Restatement did provide for a temporary guardianship of a ward domiciled in a foreign jurisdiction (at §§ 118, 150). Kansas followed the Restatement in its early cases concerning guardianships, with only minor exceptions not applicable to this case. In 1965, Kansas separated the treatment of mentally ill persons (Article 29, K.S.A. 59-2901 *et seq.*) from guardianship and conservatorship proceedings and adopted K.S.A. 59-3009. When Kansas was studying possible changes in guardianship, the American Law Institute was considering changes that ultimately led to the adoption of Restatement (Second) of Conflict of Laws. The first tentative draft was available in 1953 and the final tentative draft was available in 1965. The tentative drafts were followed by the three installments of the proposed official draft (1967-69), and the official adoption occurred in 1969. Restatement (Second) recommends that a state have jurisdiction over a child or adult '(a) who is domiciled in the state, or (b) who is present in the state, or (c) who is neither domiciled nor present in the state, if the controversy is between two or more persons who are personally subject to the jurisdiction of the state.' Restatement (Second) of Conflict of Laws § 79 (1971).

"K.S.A. 59-3009 gives specific authority to any person to file in the district court of the county where the proposed ward resides or is present a petition for appointment of a guardian. It appears that the intent of the legislature in 59-3009 was to expand the court's jurisdictional bases to conform to the recommendation ultimately adopted in Restatement (Second) of Conflict of Laws § 79 (1971). Appellant asserts that 59-3009 merely sets the venue for guardianship proceedings, and does not attempt to confer jurisdiction. Venue for guardianship proceedings is specifically set out in K.S.A. 59-2203, suggesting that 59-3009 pertains to more than just venue. Such interpretation is logical when attempting to harmonize the existence of the two statutes without finding them duplicitous.

"The Supreme Court of the United States has never had occasion to place constitutional limitations upon an attempted exercise of state power in appointing a guardian. Therefore, the question of what factual connection must exist between a state and a ward before the state has power to appoint a guardian is first to be answered by looking in each state to the statutory law which gives power to the courts. Paulsen and Best, *Guardians and the Conflict of Laws,* 45 Iowa L. Rev. 212, 213 (1960). Restatement (Second) of Conflict of Laws § 79 (1971) states:

'The state where the [ward] is physically present has the most immediate concern with him; its courts also have direct access to the [ward] and may be most qualified to decide what will best redound to his welfare. . . .' (at 237.)

'. . . The state in which the [ward] is physically present must have power to take the necessary steps for his protection . . . .' (at 238.)

Courts and commentators alike have been critical of a strict resort to domiciliary jurisdiction without some additional provision for jurisdiction in the court of the state where the ward is present. See *In re Adoption of Pratt,* 219 Minn. 414, 18 N.W.2d 147 (1945); 45 Iowa L. Rev. at 213-22.

"We are convinced the legislature intended to grant subject matter jurisdiction, based on presence in the state, and that Kansas has jurisdiction to appoint a guardian pursuant to K.S.A. 59-3009 for any incapacitated person who is within this state, even though a foreign jurisdiction has previously exercised jurisdiction by appointing a guardian or conservator or both, and continues to exercise such jurisdiction."

We adopt that part of the Court of Appeals opinion and hold the Kansas trial court had subject matter jurisdiction to appoint a guardian for Frederick J. Miller by virtue of his presence within this state pursuant to K.S.A. 59-3009.

It is also questioned whether a Kansas court with subject matter jurisdiction should exercise such jurisdiction as a matter of comity. Although the Court of Appeals expressed its disapproval of counsel and the Kansas trial judge for this lack of contact with the Nebraska court, the court found no abuse of discretion on the part of the trial judge in choosing to exercise jurisdiction over the case. We agree with that conclusion.

The central issue of this case is whether the trial court had authority to award attorney fees to Eric Severson. The general rule is that attorney fees are not allowable as costs in an action in the absence of statutory authority. *Lines v. City of Topeka,* 223 Kan. 772, 782, 577 P.2d 42 (1978); *McGuire v. McGuire,* 190 Kan. 524, 376 P.2d 908 (1962). The trial court relied on K.S.A. 59-3032 for authority to award fees to Severson and the guardian ad litem. The pertinent portion of K.S.A. 59-3032 states:

"In each proceeding the court shall allow and order paid to any individual or institution as a part of the costs thereof a reasonable fee and expenses for any professional services ordered performed by the court pursuant to this act other than those performed by any individual or institution under the jurisdiction of the department of social and rehabilitation services, but including the fee of counsel for the proposed ward or proposed conservatee or ward or conservatee when counsel is appointed by the court. Other costs and fees shall be allowed and paid as are allowed by law for similar services in other cases. The costs shall be taxed to the estate of the proposed ward or proposed conservatee or ward or conservatee, to those bound by law to support him or her or to the county of the residence of the proposed ward or proposed conservatee or ward or conservatee as the court having venue shall direct."

The issues of this case are complicated by Severson's position

as petitioner against Miller, who is represented by Nichols, the guardian ad litem. In addition, the ward has a guardian of his person and estate in Nebraska, who as a general rule, is entitled to the custody and control of the person of the ward. *Roberts v. Coffey, Administrator,* 198 Kan. 695, 426 P.2d 30 (1967); 39 Am. Jur. 2d, Guardian and Ward § 67, p. 59. We find K.S.A. 59-3032 does not provide for the allowance of fees to an attorney who personally petitions for the appointment of a guardian or conservator for a proposed ward or proposed conservatee. The statute clearly provides for "reasonable fees and expenses for any professional services *ordered performed by the court.*" (Emphasis added.) Those fees are to be allowed by the court as a part of the costs. Severson obviously wishes to obtain an adjudication of his claim for attorney fees and present it to the Nebraska court for satisfaction as a foreign judgment. We acknowledge the Kansas court is in a better position to evaluate the reasonableness of Severson's claim, but the question remains as to the authority of the court to award attorney fees. Severson, as petitioner, does not fall within the purview of the statute.

More important to this case is the fact the ward's estate is located in Nebraska and we are dealing with a claim against that estate. In response to the appellant's allegation that the Nebraska court has exclusive jurisdiction over the ward's assets because of the Nebraska conservatorship, the Court of Appeals found the action of the Nebraska guardian, an officer of the court, in consenting to the appointment of a Kansas guardian, acted as a relinquishment of jurisdiction by the Nebraska court itself. *In re Miller,* 5 Kan. App. 2d 246. We disagree with this holding. The Kansas court has no extraterritorial authority over personal property located in Nebraska (*In re Estate of DeLano,* 181 Kan. 729, 315 P.2d 611 [1957]), and we do not find the Nebraska guardian's acquiescence in the appointment of the Kansas guardian to confer such authority. Severson's remedy lies with a claim against the conservator's estate in Nebraska.

The judgment of the trial court is affirmed in part and reversed in part.

MILLER, J., dissenting: I respectfully dissent from that portion of the majority opinion disposing of the comity issue.

When a ward is physically present in this state, K.S.A. 50-3009

grants jurisdiction to Kansas courts to entertain proceedings for the appointment of a guardian. That jurisdiction is granted even though the ward already has a guardian appointed in another state. In my opinion, however, Kansas courts should not exercise jurisdiction except in an emergency situation when another state has already entered the field and has appointed a guardian. Here there was no emergency. All of the objectives of this proceeding could have and should have been pursued in the Nebraska court.

Kansas jurisdiction should not have been exercised under the factual situation presented. I would reverse the Court of Appeals and the trial court.