No. 56,527

In The Matter of The Trusteeship of Milda R. Sandstrom.
(696 P.2d 958)

Opinion filed March 2, 1985.

*Craig Shultz*, of Wichita, argued the cause and was on the brief for appellant, *Orval Fisher*.

*Kenneth M. Carpenter*, of Topeka, argued the cause and was on the brief for appellee, trustee.

The opinion of the court was delivered by

Miller, J.: This is an appeal by Orval Fisher, one of the surviving partners of the law firms of Shultz, Fry & Fisher, and Shultz, Fisher, Monnat & Shultz, from an order of the Shawnee County District Court declaring void and setting aside certain earlier orders allowing demands. The trustee, Kenneth M. Carpenter, appears as appellee.

A knowledge of the factual background is necessary to an understanding of the issues. The body of Thad Sandstrom was found at his home in Topeka, Kansas, on May 3, 1977. His widow, Milda R. Sandstrom, was charged with his murder. Jury trial was held in the District Court of Shawnee County, commencing on November 14, 1977. On December 9, 1977, the jury returned its verdict, finding her guilty of murder in the first degree. On January 19, 1978, the trial court sentenced her to life imprisonment. Mrs. Sandstrom was represented by Robert D. Hecht, of the Topeka Bar, during the trial proceedings. Thereafter, in March 1978, Mrs. Sandstrom retained Russell Shultz and the law firm of Shultz, Fry & Fisher, of Wichita, to represent her in all pending cases in which she was a party, including the direct appeal of her conviction. A contract of employment of Russell Shultz and his firm is reflected in a letter of March 10, 1978, which sets forth the terms of the employment and which document is signed as accepted and approved by Milda Sandstrom and Russell Shultz. Mr. Shultz briefed and argued Mrs.

Sandstrom's direct appeal. *State v. Sandstrom*, 225 Kan. 717, 595 P.2d 324, *cert. denied* 444 U.S. 942 (1979). Mr. Shultz, on behalf of Milda Sandstrom, also argued an appeal to this court in the Thad Sandstrom estate. See *In re Sandstrom*, 224 Kan. 293, 580 P.2d 1310 (1978). Additionally, Mr. Shultz appeared in various matters in the district court in which Mrs. Sandstrom was a party, and he handled various other matters for her. The extent of the representation and the amount of the fees are not now before us.

On March 5, 1979, Milda R. Sandstrom filed in the District Court of Shawnee County, Kansas, a petition for the appointment of a trustee under the provisions of K.S.A. 59-1901. She stated that she was serving a life sentence at the Kansas Correctional Institution for Women, that she needed a trustee to manage and administer her property, and that she was not an adjudicated incapacitated person, or a proposed ward or conservatee. She asked that Royden A. Konopaska be appointed trustee. On the same date, with petitioner appearing through Russell Shultz, her attorney, the court granted the petition and appointed Colonel Konopaska as her trustee.

We need only mention those proceedings in the trusteeship which have some bearing upon the issues here. On June 18, 1979, Russell Shultz of the firm of Shultz, Fry & Fisher, filed a petition for allowance of demand. This petition was based upon the agreement of March 10, 1978, and covered legal services performed in seven different court proceedings from February through December 1978. Milda Sandstrom signed the itemized accounting, acknowledging receipt of a copy and approving the same for payment. On June 27, 1979, the court allowed the demand in the amount of $88,752.54. As directed by the court, the trustee paid Russell Shultz $70,000 on June 28, 1979, and the balance of $18,752.54 on January 24, 1980.

On April 28, 1980, Russell Shultz, then of the firm of Shultz, Fisher, Monnat & Shultz, filed a second petition for allowance of demand, this one for legal services performed for Mrs. Sandstrom in seven different court proceedings during the calendar year 1979, under the 1978 agreement. The trial court allowed that demand in the amount of $31,452.32 on April 29, 1980, and directed the trustee to pay it. The trustee later reported to the court that he paid Russell Shultz the sum of $29,408.90 on May 10, 1980. Whether the balance of $2,043.42 was paid is not in issue here.

Colonel Konopaska, having moved to Florida and being in ill health, petitioned for approval of his final accounting and for his discharge as trustee. On April 21, 1982, at a hearing attended by Mrs. Sandstrom and Russell Shultz, the court revoked the letters of trusteeship to Royden A. Konopaska. The trustee's final accounting was not approved. The matter of the appointment of a successor trustee was taken under advisement. On May 5, 1982, the court appointed Kenneth M. Carpenter as successor trustee, and letters of trusteeship issued to him on May 13, 1982.

On June 15, 1983, Mr. Carpenter, as trustee, filed a petition in which he requested the court to set aside the 1979 and 1980 orders allowing fees to Russell Shultz and his law firms. The petition was based upon the claim that the contract of March 10, 1978, was void by reason of the legal incapacity of Mrs. Sandstrom as a result of her conviction and the imposition of a life sentence prior to the time the contract was entered into. Petitioner claimed that Mrs. Sandstrom became "civilly dead" as a result of the sentence, and thus any contract entered into by her was void. Notice of hearing on the petition was given by mailing a copy thereof to the firm of Shultz, Fisher, Monnat & Shultz. Russell Shultz died prior to the date on which the petition was filed, and both of the firms with which he was associated no longer exist. Nevertheless, Orval Fisher and Craig Shultz responded to the notice and appeared at the hearing, Fisher representing himself and Shultz appearing on behalf of the estate of Russell Shultz, deceased. Kenneth M. Carpenter appeared by counsel, Alan Hazlett.

The trial court on December 9, 1983, entered its order granting the relief sought by the successor trustee in his petition. The court reasoned that a person under life sentence, for whom a trustee is appointed, is an incapacitated person, whom one could view as tantamount to a conservatee in a voluntary conservatorship. The court observed that under our opinion in *Citizens State Bank & Trust Co. v. Nolte*, 226 Kan. 443, Syl. ¶ 1, 601 P.2d 1110 (1979), the imposition of a voluntary conservatorship deprives a voluntary conservatee of his or her capacity to contract. The court concluded that Milda Sandstrom was under incapacity, apparently both at the time the contract was entered into and at the time the petitions for allowance of demand were heard.

The court concluded that the orders were null and void.

The controlling issue is whether Milda Sandstrom had the power to enter into a valid contract for the employment of attorneys in March 1978. We conclude that she did.

From 1868 until July 1, 1970, our statutes provided that a person sentenced to confinement for life "shall thereafter be deemed civilly dead." See G.S. 1868, ch. 31, § 300; K.S.A. 21-118 (Corrick). That statute, however, was repealed by the 1969 Legislature at the time of the enactment of our present Kansas Criminal Code, and was not a part of our statutory law at the time Milda Sandstrom entered into the contract with Russell Shultz in 1978. Likewise, at the time the contract was entered into, there is no suggestion in the record that Milda Sandstrom was mentally incapacitated or under any physical or mental disability. At common law, a person convicted of a felony was said to be civilly dead; he was regarded as dead in law and could perform no legal function. In the United States, however, the doctrine does not apply even though the person is sentenced to life imprisonment, in the absence of a statutory provision to that effect. 21A Am. Jur. 2d, Criminal Law § 1032. This appears to be the general rule. See 18 C.J.S., Convicts § 6.

In March 1978, Milda Sandstrom had been convicted of murder in the first degree and was under a sentence of life imprisonment. She wished to appeal. Had she been indigent, she would have had the right to have counsel appointed to represent her under the law. She was not indigent. She wished to employ counsel of her own choosing. Nothing in our statutes prevented her from exercising her right to retain counsel. The right to engage an attorney of one's own choosing implies the right to agree to pay such an attorney. Without the right to enter into a valid contract to pay the attorney, the privilege of selecting one's own counsel becomes an empty right. The right to counsel on a direct appeal is a right of constitutional dimension. *Douglas v. California*, 372 U.S. 353, 9 L.Ed.2d 811, 83 S.Ct. 814 (1963); and see *Ross v. Moffitt*, 417 U.S. 600, 41 L.Ed.2d 341, 94 S.Ct. 2437 (1974).

Let us next examine the statutes, since repealed, relating to estates of convicts, which were in effect at the time the contract was made. K.S.A. 59-1901 authorized the district court, in its discretion, to appoint a trustee of the estate of any person

imprisoned in the penitentiary under a life sentence, to manage and administer such person's property. K.S.A. 59-1902 provided that the provisions of law relating to the estates of incapacitated persons, conservators thereof, and the powers, duties and responsibilities in connection therewith, shall govern in the administration and management of the estates of convicts, trustees thereof, and their powers, duties and responsibilities in connection therewith. K.S.A. 59-1903 provided simply that upon the death of such convict or the commutation of his or her sentence to a sentence of less than life, or his or her lawful release from imprisonment, the trustee should settle his or her accounts. There is nothing in the law which indicates that a person serving a life sentence in a penitentiary was under any disability whatsoever prior to the time a trustee was appointed under the quoted statutes. Further, there is nothing in this record to indicate that Milda Sandstrom was not competent to enter into a contract almost a year prior to the filing of her petition for the appointment of a trustee. Although, as the trial court pointed out, we have held that one under a voluntary conservatorship is, during the continuance of that conservatorship, deprived of the capacity to contract and convey property if such act will diminish the conservatorship estate, such a rule cannot apply to a convict who contracts for and agrees to pay counsel to take a direct appeal, whether the contract is made before or after the appointment of a trustee.

We hold that under the specific facts of this case, Milda Sandstrom was neither an "incapacitated person" nor a "disabled person," as defined in K.S.A. 59-3002 (Weeks) or K.S.A. 59-3002 (Ensley), when she entered into the contract in March 1978, and the contract was not invalid because of her "incapacity." Likewise, we hold that she was not an incapacitated person insofar as the allowance of attorney fees is concerned. She could make a contract to retain attorneys; she could agree to pay the attorneys; and she could consent to their payment by her trustee. Whether the trusteeship limits her from entering into other contracts is not an issue presently before us.

We hold that the contract was not void as a matter of law by reason of incapacity and that the court had power to enter the orders allowing demands. The orders were not void. The court

erred in setting them aside. The orders of June 27, 1979, and April 29, 1980, should be reinstated.

The judgment of the trial court is reversed and the matter is remanded for further proceedings in conformity with this opinion.